No. 12-56248

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

READYLINK HEALTHCARE, INC.,

*Appellant,*

versus

STATE COMPENSATION INSURANCE FUND, ET AL.,

*Appellees.*

On Appeal From the United States District Court for the
Central District of California
District Court Case No. 2:11-cv-09934 PSG (FJWx)

# APPELLANT READYLINK HEALTHCARE, INC.'S

# OPENING BRIEF

COOLEY LLP
SETH A. RAFKIN (srafkin@cooley.com)
JENNIFER M. BOGUE (jbogue@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
(858) 550-6000 (telephone)
(858) 550-6420 (facsimile)

*Attorneys for Appellant*
ReadyLink Healthcare, Inc.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the undersigned counsel for Appellant ReadyLink Healthcare, Inc. states that Appellant is a California corporation, with no parent or subsidiary, and that no publicly held company owns 10% or more of its stock.

Dated:        December 31, 2012        COOLEY LLP


By:


s/Seth A. Rafkin
            Seth A. Rafkin

Attorneys for Appellant
ReadyLink Healthcare, Inc.

# TABLE OF CONTENTS

**Page**

I.     JURISDICTION ...................................................................................1

II.    STATEMENT OF ISSUES ...............................................................1

III.   PRIMARY AUTHORITY...................................................................2

IV.   STATEMENT OF THE CASE .........................................................2

V.    STATEMENT OF THE FACTS .......................................................8

    A.     Background ...........................................................................8

    B.     The Commissioner's Decision ...........................................12

    C.     The District Court's Order .................................................13

VI.   SUMMARY OF THE ARGUMENT ...............................................15

VII.  ARGUMENT....................................................................................19

    A.     Reviewability and Standard of Review ..............................19

    B.     Younger Abstention Is Reserved for Truly "Extraordinary" Circumstances Not Presented Here ....................................20

    C.     There Is No Ongoing State-Initiated Enforcement Proceeding ..........21

           1.     The State Proceedings Here Were Initiated By ReadyLink and Arose Out of a Contract, Not a Criminal or Civil Enforcement Action....................................22

           2.     There Was and Is No Ongoing State Proceeding Within the Meaning of Younger .........................................25

    D.     The State Interests Implicated Here Do Not Meet the Younger Test ...................................................................................30

    E.     ReadyLink Had No Opportunity to Adequately Litigate the Preemption Issue in State Court .........................................34

           1.     The Preemption Issue Did Not Arise Until After the Commissioner Issued His Decision; Thus, ReadyLink Could Not Have Raised It at the Administrative Proceeding...............................................................34

i.

# TABLE OF CONTENTS
## (continued)

**Page**

2.  Neither the Administrative Law Judge nor the Insurance Commissioner Could, as a Matter of Law, Have Ruled on the Preemption Issue ...............................................35

3.  Writ Review Offered No Adequate Opportunity to Litigate Preemption.................................................36

F.  The Federal Action Would Not Enjoin the State Court Proceeding ..........................................................41

VIII.  CONCLUSION................................................................45

IX.  STATEMENT OF RELATED CASES........................................46

X.  CERTIFICATE OF COMPLIANCE ........................................47

# TABLE OF AUTHORITIES

## CASES

*Alleghany Corp. v. Pomerory*,
   898 F.2d 1314 (8th Cir. 1990) ...........................................................26

*Allen v. McCurry*,
   449 U.S. 90 (1980)............................................................................42

*AmerisourceBergen Corp. v. Roden*,
   495 F.3d 1143 (9th Cir. 2007) ...................................................passim

*Baffert v. Cal. Horse Racing Bd.*,
   332 F.3d 613 (9th Cir. 2003) ...........................................................33

*Brown v. Day*,
   555 F.3d 882 (10th Cir. 2009) .........................................................24

*Burlington Ins. Co. v. Panacorp, Inc.*,
   758 F. Supp. 2d 1121 (D. Haw. 2010)..............................................33

*CECOS Int'l, Inc. v. Jorling*,
   895 F.2d 66 (2d Cir. 1990) ...............................................................26

*Chae v. SLM Corp.*,
   593 F.3d 936 (9th Cir. 2010) ...........................................................37

*Champion Int'l Corp. v. Brown*,
   731 F.2d 1406 (9th Cir. 1984) .........................................................33

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)...................................................................passim

*Crawley v. Hamilton Cnty. Comm'rs*,
   744 F.2d 28 (6th Cir. 1984) .............................................................22

*Delta Dental Plan v. Mendoza*,
   139 F.3d 1289 (9th Cir. 1998) .........................................................25

*Employers' Reinsurance Corp. v. Karussos*,
   65 F.3d 796 (9th Cir. 1995) .............................................................32

*Fresh Int'l Corp. v. Agric. Labor Relations Bd.*,
  805 F.2d 1353 (9th Cir. 1986) ................................................................22, 23, 25

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000)....................................................................................37, 38

*Gilbertson v. Albright*,
  381 F.3d 965 (9th Cir. 2004) (en banc) ..........................................19, 20, 32, 33

*Government Emps. Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998) .........................................................................32

*Green v. City of Tucson*,
  255 F.3d 1086 (9th Cir. 2001) (en banc) ...............................................19, 20, 41

*Hawaii Housing Authority v. Midkiff*,
  467 U.S 229 (1984)..........................................................................................38

*Helene Curtis, Inc. v. Los Angeles Cnty. Assessment Appeals Bd.*,
  121 Cal. App. 4th 29 (Cal. Ct. App. 2004).......................................................39

*Huffman v. Pursue, Ltd.*,
  420 U.S. 592 (1975)...................................................................................passim

*Kentucky West Virginia Gas Co. v. Pennsylvania Pub. Util. Comm'n*,
  791 F.2d 1111 (3d Cir. 1986) ..........................................................................44

*Littlejohn v. United States*,
  321 F.3d 915 (9th Cir. 2003) ...........................................................................42

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994) ..............................................................................44

*Maymo-Melendez v. Alvarez-Ramirez*,
  364 F.3d 27 (1st Cir. 2004)...............................................................6, 16, 26, 27

*Mayors v. Engelbrecht*,
  149 F.3d 709 (7th Cir. 1998) ...........................................................................26

*McAllister v. Cal. Coastal Comm'n*,
  169 Cal. App. 4th 912 (Cal. Ct. App. 2008)................................................29, 39

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982)........................................................................34, 38

*Miofsky v. Superior Court*,
    703 F.2d 332 (9th Cir. 1983) ..........................................................21

*Montana v. United States*,
    440 U.S. 147 (1979)..........................................................................42

*Nev. Entm't Indus., Inc. v. City of Henderson*,
    8 F.3d 1348 (9th Cir. 1993) (per curiam), *withdrawn by* 21 F.3d 895 (9th
    Cir. 1994) ..................................................................................6, 16

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
    491 U.S. 350 (1989) ("*NOPSI*") ..............................................passim

*Norfolk & W. Ry. Co. v. Pub. Utils. Comm'n*,
    926 F.2d 567 (6th Cir. 1991) ..........................................................26

*O'Neill v. City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994) ..............................................................26

*Ohio Civil Rights Commission ["OCRC"] v. Dayton Christian Schools, Inc.*,
    477 U.S. 619, 624 (1986) ..........................................................24, 25

*Pennzoil Co. v. Texaco, Inc.*,
    *481 U.S. 1 (1987)*............................................................................43

*Polykoff v. Collins*,
    816 F.2d 1326 (9th Cir. 1987) ....................................................30, 31

*Potrero Hills Landfill, Inc. v. County of Solano*,
    657 F.3d 878 (9th Cir. 2011) ....................................................passim

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*,
    397 F.3d 56 (1st Cir. 2005)..............................................................42

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v.
City of San Jose*,
    546 F.3d 1087 (9th Cir. 2008) ..................................................passim

*Thomas v. Texas State Bd. of Med. Exam'rs*,
    807 F.2d 453 (5th Cir. 1987) ......................................6, 16, 26, 28, 29

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*,
   535 U.S. 635 (2002)..................................................................................3

*Wooley v. Maynard*,
   430 U.S. 705 (1977)................................................................................43

*Younger v. Harris*,
   401 U.S. 37 (1971)..................................................................................43

**STATUTES**

26 U.S.C. § 274(d) ......................................................................................13

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1367 ...........................................................................................1

California Civil Procedure Code § 1094.5.............................................38, 39

**OTHER AUTHORITIES**

26 C.F.R. §§ 1.274-5, 1.62-2 ...............................................................13, 14

California Constitution, Article III, section 3.5 ................................passim

Federal Rule of Appellate Procedure 4(a)(1)(A) .......................................1

17A-122 Moore's Federal Practice - Civil § 122.05 (3d ed. 2012)........................23

vi.

## I.      JURISDICTION

The district court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.  Appellant's complaint presents a federal question because it seeks a determination that a new policy issued by Respondent Insurance Commissioner is preempted by federal law, namely the Internal Revenue Code and related regulations.  The case also asserts claims for relief under state law.

The district court's order at issue in this appeal dismissed all of Plaintiff ReadyLink Healthcare, Inc.'s causes of action thus rendering it a final judgment. Excerpt of Record ("EOR") 0010.  This Court has jurisdiction over final decisions of the district courts of the United States under 28 U.S.C. § 1291.

The judgment upon which ReadyLink bases its appeal was entered on June 12, 2012.  EOR0013-14; 0091.  ReadyLink filed its Notice of Appeal on July 6, 2012.  *Id.* at 0011-12; 0092.  The appeal is timely pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

## II.     STATEMENT OF ISSUES

Whether the district court erred in abstaining from this case under the *Younger* doctrine.

## III.  PRIMARY AUTHORITY

**<u>California Constitution, Article III, section 3.5</u>**

An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:

(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;

(b) To declare a statute unconstitutional;

(c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations.

## IV.  STATEMENT OF THE CASE

The question presented here is whether it was permissible for the district court to decide this case by not deciding this case.  Appellant ReadyLink Healthcare, Inc. ("ReadyLink"), a temporary nursing agency, filed its case in the United States District Court for the Central District of California on November 30, 2011.  EOR0072; 0088.  It sought, among other things, a decision that the Respondent Insurance Commissioner's newly announced policy imposing

additional workers' compensation insurance premiums on an array of employers including ReadyLink is preempted by federal law, namely, Internal Revenue Service ("IRS") regulations.  *Id.* at 0079-80 (Class Action Complaint ("CAC") ¶¶ 36-39).

The Commissioner's rule requires employers to adhere to precisely the sort of burdensome red tape record keeping procedures that the IRS regulations do away with through safe harbor provisions.  Under the Commissioner's rule, an employer must forego the protection of the IRS safe harbors or face steep premium hikes – in ReadyLink's case a hike of more than $500,000 for a single policy year.

Defendants/Respondents State Compensation Insurance Fund of California ("SCIF") and the Department of Insurance moved to dismiss for failure to state a claim and on jurisdictional grounds.  EOR0089.  The district court ordered additional briefing on *Younger* and *Colorado River* abstention on April 20, 2012. *Id.* at 0015-16.

Federal court is without question a proper place (perhaps *the* proper place) to decide questions of federal preemption.  *See Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002) (noting federal courts undoubtedly can decide issues of federal preemption under 28 U.S.C. § 1331).  The district court, however, invoked the doctrine of *Younger* abstention and dismissed the case on June 1, 2012.  EOR0001.  The district court reasoned that ReadyLink could and

3.

should have raised its preemption argument in a state court proceeding and therefore the district court was free to abstain from deciding this case. *Id.* at 0004-10.

As shown herein, the district court's decision was wrong. It was wrong about ReadyLink being able to raise preemption in a state court proceeding. But even more fundamentally, even if that was true, all of the remaining factors necessary for a federal court to abstain under *Younger* are absent here.

The situations in which a federal court can abstain from deciding a case are few and far between. Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "[A]bstention remains an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 878, 882 (9th Cir. 2011) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358 (1989) ("*NOPSI*")).

The requirements of *Younger* abstention are clear: (1) a state-initiated proceeding must be ongoing; (2) the proceeding must implicate important state interests; (3) the federal plaintiff must have an adequate opportunity to litigate federal constitutional issues in the state proceeding; and (4) the federal court action

would enjoin the proceeding or have the practical effect of doing so. *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) ("*City of San Jose*").

A district court is not free to consider some but not all of the factors or to ascribe more or less weight among them. To the contrary, this Court has been clear that all four *Younger* requirements must be "strictly met." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007). Here, none are.

To begin, there is no *state initiated* proceeding. Indeed, in its order the district court conceded that the state proceeding it relied on to invoke *Younger* abstention was initiated by *ReadyLink*, not the state. EOR0005-06. The state proceeding at issue was *ReadyLink*'s request for administrative review of the premium hike imposed by Respondent SCIF, ReadyLink's former workers' compensation insurer. That is the only mechanism available to undo a specific premium assessment. It is hardly a substitute for a full and fair hearing on federal questions. Indeed, the California Constitution precludes consideration by the Commissioner or his administrative law judges of questions of federal preemption. Cal. Const. Art. III, § 3.5. The simple fact is that *ReadyLink*, not the state, initiated the administrative review and thus *Younger* abstention cannot apply.

Further, it is not even clear that the state proceeding constitutes an "ongoing" proceeding within the meaning of *Younger*. Several circuits hold that where the administrative proceeding is complete, the proceeding is no longer "ongoing" even if there may be avenues of appeal available through the state's courts. Others take a contrary view. *Compare Thomas v. Texas State Bd. of Med. Exam'rs*, 807 F.2d 453, 456 (5th Cir. 1987) (not an ongoing proceeding) *with Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 35 (1st Cir. 2004) (still an ongoing proceeding). This Court withdrew its opinion on this issue and thus it remains an open question. *See Nev. Entm't Indus., Inc. v. City of Henderson*, 8 F.3d 1348 (9th Cir. 1993) (per curiam), *withdrawn by* 21 F.3d 895 (9th Cir. 1994), *and on reh'g* 26 F.3d 131 (9th Cir. 1994) (unpublished disposition) (holding that *Younger* question was moot); *see also City of San Jose*, 546 F.3d 1094 (recognizing this is an open issue).

Next, the state proceeding does not implicate the type of interests that rise to a level warranting *Younger* abstention. Every issue subject to adjudication is, of course, important. However, that is not the test for *Younger* purposes. For a federal court to abstain, the state must be seeking to enforce its criminal or civil statutes. Indeed, the *Younger* doctrine was first applied *only* to matters where a party beseeched a federal court to enjoin an ongoing state criminal proceeding. It has been extended only to closely aligned state initiated civil enforcement matters.

6.

*NOPSI*, 491 U.S at 368 (observing that *Younger* has been extended to civil enforcement proceedings and proceedings implicating important judicial functions); *see also Potrero Hills*, 657 F.3d at 884-87 (holding *Younger* did not apply because the state was not in an enforcement posture and no vital judicial interests were at stake); *cf. Huffman v. Pursue, Ltd.*, 420 U.S. 592, 598, 604 (1975) (applying *Younger* to state civil nuisance proceeding which resulted in the closing of a movie theater because the proceeding was "both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials").

As this Court put it last year:

> [I]t is not the bare subject matter of the underlying state law that we test to determine whether the state proceeding implicates an "important state interest" for *Younger* purposes. Were that so, then any ordinary civil litigation between private parties requiring the interpretation of state law would pass *Younger* muster. Rather, the content of state laws becomes "important" for *Younger* purposes *only when coupled with the state executive's interest in enforcing such laws*.

*Potrero Hills*, 657 F.3d at 884-85 (emphasis added). Here, the state did not initiate the state proceeding; by definition then, it is not seeking to enforce its statutes.

Turning to the third *Younger* factor, it is clear that ReadyLink had no opportunity to litigate the preemption issue in the state proceeding. First, the Commissioner's decision that stands in contrast to and is thus preempted by federal law was the *result* of the state proceeding. In upholding SCIF's premium hike, the Commissioner announced his new policy, which deprives employers of the

7.

benefits of the IRS safe harbor regulations. Thus, ReadyLink could not have litigated the preemption issue *before* the very rule at issue was announced. Moreover, as noted above, the California Constitution precludes both administrative law judges and the Commissioner himself from deciding issues of preemption. In other words, even if the preemption issue existed going into the administrative proceeding initiated by ReadyLink it could not, as a matter of law, have been decided in that proceeding.

Finally, ReadyLink does not seek to enjoin any state proceeding. Again, that factor must be present in order to abstain under *Younger*. Here, however, ReadyLink does not ask the district court to stop any state proceeding in its tracks. It may well be that if ReadyLink's preemption argument prevails, it will affect the Commissioner's *policy* but that is a far different issue than seeking to halt a specific state-initiated *enforcement action* from proceeding.

In short, none of the essential requirements necessary to invoke the narrow doctrine of *Younger* abstention exists here. Accordingly, the district court's decision should be reversed.

## V. STATEMENT OF THE FACTS

### A. Background

The determination of workers' compensation insurance premiums is a somewhat complicated affair. EOR0073-74 (CAC § 7). Insurance carriers assess

a number of different factors such as the employer's history of workers' compensation claims, applicable discounts, merit ratings, etc. *Id.* One factor is the employer's payroll, i.e., the amount of wages it pays its workers. *Id.* This makes sense because one of the things an employee with a workers' compensation claim may be eligible to receive is a wage replacement benefit, i.e., a benefit intended to compensate the worker for loss of wages resulting from a workplace injury. *Id.*

It is this factor in the premium determination process – the amount of wages paid to a workforce – that brings us to the underlying crux of this case. Simply put, *per diem* payments to workers do not count as part of "wages" for purposes of workers' compensation insurance premium determination. *Id.* at 0037. *Per diem* payments are amounts paid to workers to cover anticipated expenses incurred in connection with their work. *Id.* at 0073-74 (CAC § 7).

In accordance with IRS regulations, ReadyLink's *per diem* payments were excluded from wages for federal tax purposes. *Id.* at 0074 (CAC ¶ 8). Similarly, California's own guide for determining workers' compensation premiums, the Uniform Statistical Reporting Plan ("USRP"), also excludes *per diem* payments from "wages" for premium purposes. *Id.* at 0037. The USRP sets forth the rules, rating tables and formulae for workers' compensation experience rating. *Id.* It

states that *per diem* payments should not be considered as wages for premium determination purposes provided they are reasonable.[1] *Id.*

This case arose out of SCIF's decision to *include* ReadyLink's *per diem* payments and its resulting imposition of additional premiums against ReadyLink in excess of $500,000 for a single policy year. *Id.* at 0074-75 (CAC ¶ 10).

SCIF was ReadyLink's workers' compensation insurer for a number of years. *Id.* at 0073 (CAC § 6). SCIF had the right to conduct year-end audits to determine whether its estimate of ReadyLink's wages for a given year were accurate. *Id.* at 0074 (CAC ¶ 7). If the actual wages paid were higher, the policy gave SCIF the right to assess an additional premium. *Id.* SCIF conducted these end of year reviews each year from 2000-2005. *Id.* at (CAC ¶ 8). During each of these reviews, SCIF audited the amounts paid to ReadyLink nurses. *Id.* Each year, SCIF knew that ReadyLink had paid its nurses *per diem* payments in addition to wages. *Id.* And each year SCIF excluded those *per diem* payments from wages for purposes of premium determination. *Id.*

Importantly, the *per diem* payments were also excluded from the wage replacement benefits SCIF paid out in connection with workers' compensation

---

[1] The USRP is maintained by the Workers' Compensation Insurance Bureau, which is a designated "statistical agent" of the Insurance Commissioner. EOR0023, n.5.

claims. *Id.* at 0075 (CAC ¶ 11). In other words, the benefits SCIF provided on claims made under its policies did *not* cover *per diem* payments.

In 2006, SCIF learned that ReadyLink was preparing to switch to another insurer. *Id.* at 0074 (CAC ¶ 9). ReadyLink had determined that it could get a better deal on workers' compensation insurance as private insurers had stepped back into the California workers' compensation market. *Id.* In its end of year review for September 2005 through September 2006 (the "2005 Policy Year"), SCIF bucked its prior six-year history, and for this first time decided that ReadyLink's *per diem* payments would be counted as wages. *Id.* at 0074-75 (CAC ¶¶ 10-11). This about-face resulted in SCIF's assessment of an additional premium to ReadyLink in the amount of $555,327.53 and a total premium of $800,106 for the 2005 Policy Year. *Id.* at 0075 (CAC ¶¶ 10, 12). SCIF paid out a mere $5,729 for claims under the policy for that year. *Id.* (CAC ¶ 12). With the additional $555,327.53 premium hike, SCIF (a non-profit organization) stood to generate a 99% profit from ReadyLink's 2005 policy. Moreover, these are the same *per diem* payments that were part of an IRS audit for the same time period. *Id.* at 0077 (CAC ¶ 20); *see also id.* at 0035-36. The IRS determined that the *per diem* were properly excluded from counting as wages. *Id.* at 0077 (CAC ¶ 20); *see also id.* at 0036.

11.

### B.     The Commissioner's Decision

ReadyLink challenged SCIF's additional premium assessment by filing a request for review with the California Department of Insurance.  *Id.* at 0075-76 (CAC ¶ 14).  The Insurance Commissioner adopted the proposed interpretation of the administrative law judge hearing the matter ("Commissioner's Decision").  *Id.*; see also 0019.  ReadyLink sought a writ of administrative mandamus in the Los Angeles Superior Court, requesting that the Commissioner's Decision confirming SCIF's 2005 Policy Year audit and assessment of $555,327.53 in additional premiums be set aside.  *Id.* at 0075 (CAC ¶ 14).  The trial court denied the writ and the California Court of Appeal affirmed.  *Id.* 0076 (CAC ¶ 14).  This month, ReadyLink petitioned the California Supreme Court to review the denial of the writ.[2]  Motion to Take Judicial Notice ("MJN") filed concurrently herewith, Exhibit 1.

The Commissioner's Decision was designated "precedential" meaning it can be cited and relied on by parties and administrative law judges in the future.  EOR0019.  In addition to upholding the additional $555,327.53 premium assessment against ReadyLink, the Commissioner's Decision sanctioned SCIF's

---

[2] ReadyLink has requested that the California Supreme Court stay its consideration of the petition pending this Court's decision on this appeal as it may inform the state court's view.

new found practice of including *per diem* payments in determining workers' compensation premiums unless four requirements are met:

a) "the employee worked at a location other than their permanently assigned work place." *Id.* at 0076 (CAC ¶ 16.a.); *see also id.* at 0050;

b) "employees must demonstrate that they assumed duplicate living expenses while engaging in business travel. *Id.* at 0076 (CAC ¶ 16.b.); *see also id.* at 0050;

c) "employer must provide records proving that each employee receiving per diem reimbursement worked at a location that required the employee to incur additional living expenses. *Id.* at 0076 (CAC ¶ 16.c.); *see also id.* at 0051; and

d) "an employer's records must demonstrate the employee incurred additional duplicate living expenses and that such expenses were mitigated by per diem reimbursement." *Id.* at 0076 (CAC ¶ 16.d.); *see also id.* at 0051).

## C.    The District Court's Order

ReadyLink filed a class action complaint in the Central District of California seeking, among other things, a declaration that the Commissioner's Decision, especially the documentation-heavy substantiation protocol, which applies regardless of whether the insureds have complied with IRS safe harbor provisions,

is contrary to and preempted by federal law. *Id.* at 0079-80 (CAC ¶¶ 36-39). Specifically, the Commissioner's Decision conflicts with the benefits provided by the Internal Revenue Code, Internal Revenue Service Regulations and the rules and procedures established there under by the IRS Commissioner, including but not limited to, 26 U.S.C. § 274(d), 26 C.F.R. §§ 1.274-5, 1.62-2, IRS Revenue Procedure 2000-39, and IRS Revenue Bulletin 2011-42. *Id.* at 0076-77, 0079-80 (CAC ¶¶ 17-19, 37-38). Those provisions specifically relieve employers such as ReadyLink from the administrative burden of detailed record keeping for *per diem* payments provided the employer comply with the IRS safe harbor provision. Through its Complaint, ReadyLink seeks a determination that the Commissioner's Decision undermines and erects a substantial obstacle to the accomplishment of the objectives of the IRS Regulations and is therefore preempted. *Id.*

Each Respondent moved to dismiss on a variety of grounds. *Id.* at 0003. The district court raised the issue of *Younger* abstention and directed the parties to provide supplemental briefing on the issue. *Id.* at 0004. After considering the supplemental briefs, the district court ruled that it would abstain under *Younger* and thus granted Respondents' motions to dismiss. *Id.* at 0004, 0010. This appeal followed.

14.

## VI.   SUMMARY OF THE ARGUMENT

Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817.  "[A]bstention remains an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Potrero Hills*, 657 F.3d at 882 (quoting *NOPSI*, 491 U.S. at 358).

The requirements of *Younger* abstention are clear: (1) a state-initiated proceeding must be ongoing; (2) the proceeding must implicate important state interests; (3) the federal plaintiff must have an adequate opportunity to litigate federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so.  *City of San Jose*, 546 F.3d at 1092.

A district court is not free to consider some but not all of the factors or to ascribe more or less weight among them.  To the contrary, this Court has been clear that all four *Younger* requirements must be "strictly met." *AmerisourceBergen*, 495 F.3d at 1148.  None of the factors necessary to invoke *Younger* abstention are present here.

To begin, there is no *state initiated* proceeding.  The district court conceded that the state proceeding it relied on to invoke *Younger* abstention was initiated by

15.

*ReadyLink*, not the state. EOR0005-06. The state proceeding at issue was *ReadyLink*'s request for administrative review of the premium hike imposed by Respondent SCIF, ReadyLink's former workers' compensation insurer. The simple fact is that *ReadyLink,* not the state, initiated the administrative review and thus *Younger* abstention cannot apply on that basis alone.

Further, it is not even clear that the state proceeding constitutes an "ongoing" proceeding within the meaning of *Younger.* Several circuits hold that where the administrative proceeding is complete, the proceeding is no longer "ongoing" even if there may be avenues of appeal available through the state's courts. Others take a contrary view. *Compare Thomas*, 807 F.2d at 456 (not an ongoing proceeding) *with Maymo-Melendez*, 364 F.3d at 35 (still an ongoing proceeding). This Court withdrew its opinion on this issue and thus it remains an open question. *See Nev. Entm't Indus.*, 8 F.3d 1348, *withdrawn by* 21 F.3d 895 (9th Cir. 1994), *and on reh'g* 26 F.3d 131 (9th Cir. 1994) (unpublished disposition) (holding that *Younger* question was moot); *see also City of San Jose*, 546 F.3d 1094 (recognizing this is an open issue). *Younger* abstention grew out of the concern to guard against using the federal court to stop an ongoing enforcement proceeding in its tracks, e.g., a criminal prosecution. Thus, once the proceeding is complete the concern animating *Younger* drops out even if appellate review of that proceeding is available. Thus, we submit, this Court should join the Second, Fifth

16.

and Sixth circuits and adopt a view that state proceedings are no longer "ongoing" within the meaning of *Younger* once the enforcement proceeding itself is complete regardless of whether appellate review is available or has been invoked.

Next, the state proceeding here does not implicate the type of interests that rise to a level warranting *Younger* abstention. For a federal court to abstain, the state must be seeking to enforce its criminal or civil statutes. Indeed, the *Younger* doctrine was first applied *only* to matters where a party beseeched a federal court to enjoin an ongoing state criminal proceeding. It has been extended only to closely aligned state initiated civil enforcement matters. *NOPSI*, 491 U.S at 368 (observing that *Younger* has been extended to civil enforcement proceedings and proceedings implicating important judicial functions); *see also Potrero Hills*, 657 F.3d at 884-87 (holding *Younger* did not apply because the state was not in an enforcement posture and no vital judicial interests were at stake); *cf. Huffman*, 420 U.S. at 598, 604 (applying *Younger* to state civil nuisance proceeding which resulted in the closing of a movie theater because the proceeding was "both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials").

As this Court put it last year:

[I]t is not the bare subject matter of the underlying state law that we test to determine whether the state proceeding implicates an "important state interest" for *Younger* purposes. Were that so, then any ordinary civil litigation between private parties requiring the

interpretation of state law would pass *Younger* muster. Rather, the content of state laws becomes "important" for *Younger* purposes *only when coupled with the state executive's interest in enforcing such laws*.

*Potrero Hills*, 657 F.3d at 884-85 (emphasis added). Here, the state did not initiate the state proceeding; by definition then, it is not seeking to enforce its statutes.

Turning to the third *Younger* factor, it is clear that ReadyLink had no opportunity to litigate the preemption issue in the state proceeding. First, the Commissioner's decision that stands in contrast to and is thus preempted by federal law was the *result* of the state proceeding. In upholding SCIF's premium hike, the Commissioner announced his new policy, which deprives employers of the benefits of the IRS safe harbor regulations. Thus, ReadyLink could not have litigated the preemption issue *before* the very rule at issue was announced. Moreover, the California Constitution precludes both administrative law judges and the Commissioner himself from deciding issues of preemption. In other words, even if the preemption issue existed going into the administrative proceeding initiated by ReadyLink it could not, as a matter of law, have been decided in that proceeding.

Finally, ReadyLink does not seek to enjoin any state proceeding. Again, that factor must be present in order to abstain under *Younger.* Here, however, ReadyLink does not ask the district court to stop any state proceeding in its tracks. It may well be that if ReadyLink's preemption argument prevails, it will affect the

18.

Commissioner's *policy* but that is a far different issue than seeking to halt a specific state-initiated *enforcement action* from proceeding.

In short, none of the essential requirements necessary to invoke the narrow doctrine of *Younger* abstention exists here. Accordingly, the district court's decision should be reversed.

## VII. ARGUMENT

### A. Reviewability and Standard of Review

The issue of *Younger* abstention was raised by the district court, which ordered supplemental briefing on the issue on April 20, 2012. EOR0004; *see also id.* at 0091. Respondents and ReadyLink submitted their additional briefing on this issue on May 14 and 15, 2012 and May 26, 2012 respectively. *Id.* at 0091. The district court ruled on the abstention issue by way of its order dated June 1, 2012. *Id.* at 0001. ReadyLink seeks review of this order. *Id.* at 0011-12.

Whether the district court properly invoked and abstained under *Younger* is reviewed de novo. *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001) (en banc), *overruled, in part, on other grounds by Gilbertson v. Albright*, 381 F.3d 965, 968-69 (9th Cir. 2004) (en banc).

**B.** ***Younger* Abstention Is Reserved for Truly "Extraordinary" Circumstances Not Presented Here**

Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. "As virtually all cases discussing [abstention] doctrines emphasize, the limited circumstances in which … abstention by federal courts is appropriate … remain the exception rather than the rule." *AmerisourceBergen*, 495 F.3d at 1148 (quoting *Green*, 255 F.3d at 1089) (internal quotation marks omitted).

> "[A]bstention remains an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."

*Potrero Hills*, 657 F.3d at 882 (quoting *NOPSI*, 491 U.S. at 358).

The U.S. Supreme Court and the Ninth Circuit have made clear that "the mere existence of parallel state proceedings is not sufficient" to warrant *Younger* abstention. *Gilbertson*, 381 F.3d at 974 (citing *NOPSI*, 491 U.S. at 372). Rather, *Younger* abstention is appropriate only where all four of the following are met:

> (1) a state-initiated enforcement (or closely related) proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves.

*City of San Jose*, 546 F.3d at 1092. All four requirements must be "strictly met."

*AmerisourceBergen*, 495 F.3d at 1148.

20.

### C.     There Is No Ongoing State-Initiated Enforcement Proceeding

The *Younger* doctrine was originally limited to cases involving a pending state c*riminal* proceeding. *Miofsky v. Superior Court*, 703 F.2d 332, 336 (9th Cir. 1983). In other words, the doctrine derived out of the need to prevent a *criminal defendant* from using the federal court to attempt to stop the state's *criminal* proceeding. This is important because to the extent *Younger* has been extended to civil proceedings it is only where the state action presents obvious parallels to criminal proceedings, namely, where the proceeding is initiated by the *state* and where the proceeding is one to enforce a statute on behalf of the public, or where the court's order is uniquely in furtherance of the state's ability to perform its judicial functions. *NOPSI*, 491 U.S at 368 (observing that *Younger* has been extended to civil enforcement proceedings and proceedings implicating important judicial functions); *see also Potrero Hills*, 657 F.3d at 884-87 (holding *Younger* did not apply because the state was not in an enforcement posture and no vital judicial interests were at stake); *cf. Huffman*, 420 U.S. at 598, 604 (applying *Younger* to state civil nuisance proceeding which resulted in the closing of a movie theater because the proceeding was "both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials").

Accordingly, abstention is appropriate only where the parallel state action is: (1) a *state-initiated* proceeding; (2) one in which the state is *coercively* enforcing

its laws; and (3) an *ongoing* proceeding at risk of being stopped by the federal case. *Potrero Hills*, 657 F.3d at 882-83; *AmerisourceBergen*, 495 F.3d at 1148-49. Here, ReadyLink, not the state, initiated the state proceeding, the state proceeding grew out of a contractual remedy invoked by SCIF, not enforcement of a criminal or civil statute and, finally, the state proceeding is not *ongoing.*

### 1. The State Proceedings Here Were Initiated By ReadyLink and Arose Out of a Contract, Not a Criminal or Civil Enforcement Action

*Younger* only applies where "the federal plaintiff is a *defendant* in ongoing or threatened state court proceedings [and is] seeking to enjoin continuation of those state proceedings." *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984) (emphasis added); *accord Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1360 n.8 (9th Cir. 1986).

Here, there is no dispute that *ReadyLink* – not the state – initiated the state action. ReadyLink filed the administrative action with the Department of Insurance challenging the appropriateness of SCIF's $555,327.53 premium hike. EOR0074-75 (CAC ¶ 10). ReadyLink then petitioned for writ of administrative mandamus in the trial court. *Id.* at 0075-76 (CAC ¶ 14). ReadyLink next appealed to the California Court of Appeals and is now petitioning for review by the California Supreme Court. MJN, Ex. 1. Indeed, ReadyLink initiated the state court proceedings at every level.

22.

Further, for *Younger* to apply the state proceeding must be *coercive*, i.e., a proceeding in which the plaintiff's participation is truly involuntary, rather than remedial. The coercive underpinning of the doctrine, which is obviously present in criminal proceedings, is important and has guided the narrow circumstances in which *Younger* applies to civil matters. In short, the civil matter must involve an attempt by a state actor to enforce a statute. *See Potrero Hills*, 657 F.3d at 883-84 (considering coercive nature of the action and rejecting abstention where state was not in enforcement posture against federal plaintiffs). Where the federal plaintiff initiated the state civil proceeding to remedy a past wrong it lacks this coercive/enforcement element and thus, *Younger* does not apply. *Fresh Int'l Corp.*, 805 F.2d at 1360 n.8; *see also* 17A-122 Moore's Federal Practice - Civil § 122.05 (3d ed. 2012) ("*Younger* abstention may be appropriate with respect to coercive proceedings, but not with respect to remedial proceedings.").

Here, ReadyLink voluntarily sought remedial relief from the Insurance Commissioner. This is far from the coercive, state-initiated enforcement action to which *Younger* applies. *See NOPSI*, 491 U.S. at 368 (noting that *Younger* only applies to civil enforcement actions and cases involving orders that are necessary for the state to perform judicial functions). Further, the conduct ReadyLink sought to undo was SCIF's after-the-fact premium assessment. In levying that assessment, SCIF invoked and relied on its right to do so under its contract of

insurance with ReadyLink. In short, there was nothing coercive about the proceeding *ReadyLink* initiated, nor was the state seeking to enforce a statutory remedy against ReadyLink.

*Brown v. Day*, 555 F.3d 882 (10th Cir. 2009) is instructive. Brown requested a hearing before the state Division of Health Policy and Finance ("HPF") to contest the termination of her Medicaid benefits. *Id.* at 886. The Director of HPF upheld the agency's decision. *Id.* Brown sued the HPF Director in federal court, alleging that the Director's decision violated federal Medicaid statutes and regulations. *Id.* at 886-87. The Director moved to dismiss based on *Younger*. *Id.*

The Tenth Circuit declined to abstain, holding the "federal plaintiff's challenge to a state administrative agency's decision to terminate her Medicaid benefits" was "not the type of proceeding entitled to *Younger* deference." *Brown*, 555 F.3d at 884 & 889. Because (a) the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state, (b) the state proceedings themselves were not the state conduct being challenged in federal court, and (c) the federal plaintiff had committed no cognizable bad act that would have precipitated proceedings by the state, *Younger* was inapplicable. *Id.* at 893.

The authority cited by Respondents below only serves to show why *Younger* does not apply here. In *Ohio Civil Rights Commission ["OCRC"] v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 624 (1986) ("*Dayton*"), the OCRC initiated

24.

administrative agency proceedings against Dayton based on Dayton's alleged gender discrimination. While agency proceedings were underway, Dayton asked the federal court to enjoin the OCRC proceedings. Thus, unlike here, *Dayton* involved a coercive proceeding *initiated by the state*. Indeed, *Dayton* specifically distinguished cases in which the state had not brought an enforcement procedure. *Id.* at 627 n.2. Further, as discussed in section VII.F., ReadyLink does not seek to enjoin a state proceeding.

Similarly, in *Delta Dental Plan v. Mendoza*, 139 F.3d 1289 (9th Cir. 1998) this Court affirmed *Younger* abstention in where the state proceeding was *initiated by a state agency*. The Commissioner of Corporations had issued a "cease and desist" order enjoining Delta to discontinue alleged to violations of the Knox-Keene Act. *Delta Dental*, 139 F.3d at 1293. Although Delta took affirmative steps to contest the order, its participation was not "voluntary" within the meaning of *Younger*. *Fresh Int'l*, 805 F.2d at 1360 n.8 (state proceeding not "truly voluntary" where brought in response to an agency-initiated order enjoining the federal plaintiff).

### 2. There Was and Is No *Ongoing* State Proceeding Within the Meaning of *Younger*

In addition to the requirements already discussed, *Younger* can apply only where the state-initiated proceeding is ongoing. *City of San Jose*, 546 F.3d at 1092. It is an open question in this Circuit as to whether a proceeding is ongoing

where the *administrative* proceeding has concluded but appellate review is available. *Id.* at 1093. "In other words, must federal courts view the administrative proceeding and the possibility for state-court review as one unitary proceeding?" *Id.*[3]

The district court concluded that the state proceedings should be deemed ongoing for *Younger* purposes. We disagree with that finding.

Again, *Younger* abstention originated out of the need to prevent the federal court from being used to stop a state *criminal enforcement* proceeding. Thus, the "unitary proceeding" question is borne out of the recognition that once the enforcement proceeding has concluded, the most basic premise for applying *Younger* is no longer present. In other words, whether appellate review of the *result* of an enforcement proceeding is available does not change the fact that the prime concern of *Younger* – stopping an enforcement proceeding in its tracks – evaporates by definition once the enforcement proceeding has concluded. Applied

---

[3] The district court correctly noted that this Court withdrew a prior opinion addressing this issue (EOR0005) and that there other circuits are split on this question. The First, Third, Seventh and Eighth Circuits have held that an administrative proceeding and the judicial review thereof are one unitary proceeding. *See Maymo-Melendez*, 364 F.3d at 35; *Mayors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 790-91 (3d Cir. 1994); *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1316-17 (8th Cir. 1990). The Second, Fifth and Sixth Circuits have held that they are not unitary. *See Norfolk & W. Ry. Co. v. Pub. Utils. Comm'n*, 926 F.2d 567, 572 (6th Cir. 1991); *CECOS Int'l, Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir. 1990); *Thomas*, 807 F.2d at 456.

here, the administrative review of ReadyLink's request to undo SCIF's premium assessment had concluded well before the federal case was filed. Simply put, even assuming the administrative proceeding constituted an enforcement action subject to *Younger*, there is no doubt it is no longer ongoing.

In reaching a contrary conclusion, the district court relied on *Huffman v. Pursue, Ltd.* EOR0006. The district court acknowledged, however, that "*Huffman* is not controlling of the present matter because in *Huffman* the state court proceeding had been initiated by state officials, whereas ReadyLink voluntarily chose to file for a writ of mandamus in state court." *Id.* This is a crucial distinction. Even the First Circuit, which falls on the side of holding administrative proceedings and the judicial review thereof as one unitary proceeding, has stated, "*Huffman* is a reliable guide only where full-fledged state administrative proceedings of a judicial and, arguably, of a coercive nature, are directed against the federal plaintiff." *Maymo-Melendez*, 364 F.3d at 36. Again, as discussed above, ReadyLink (not the state) initiated the administrative proceeding and subsequent state court review.

Further, the district court erred in finding that the same concerns about comity discussed in *Huffman* are present here. EOR0006. In *Huffman*, the sheriff and prosecuting attorney of the County brought a nuisance action against Pursue, Ltd. in the Court of Common Pleas in Allen County, Ohio. 420 U.S at 598.

Pursue lost. *Id.* Instead of appealing the judgment, Pursue filed suit in the Northern District of Ohio. *Id.* Pursue did not appeal in state court because it believed that doing so would be futile. *Id.* at 610. The Supreme Court observed that in that instance, permitting the federal action to proceed would be duplicative and "a direct aspersion on the capabilities and good faith of state appellate courts." *Id.* at 608.

On the contrary, here, ReadyLink *did* appeal the trial court's writ denial. EOR0075-76 (CAC ¶ 14); *see also* MJN, Ex. 1, p. 11. The critical point here, as discussed further in section VII.E. below, is that none of the issues presented in ReadyLink's federal complaint *have been or could have been* adequately litigated in state court. As such, the policy underlying *Huffman* is inapplicable.

This case is more analogous to *Thomas v. Texas State Board of Medical Examiners* and its progeny. There, the court distinguished *Thomas* from *Huffman* because no state court trial of the issues presented in the federal case had taken place and no injunction against a state court proceeding was sought.[4] 807 F.2d at 456. Thus, there was no concern of duplicating an entire trial that had already taken place. *Id.* Further, the court held that "[t]he mere availability of state judicial review of state administrative proceedings does not amount to the

---

[4] The state court proceedings in both *Huffman* and *Thomas* were coercive. *Thomas*, 807 F.2d at 455.

pendency of state judicial proceedings within the meaning of *Huffman*." *Id.* And, "[a] person who contends that his constitutional rights have been violated by a state administrative proceeding is not required to resort to an appeal to state courts before seeking relief in a federal forum." *Id.*

Similarly here, ReadyLink need not – and indeed, cannot – seek redress in state court for the constitutional violations arising out of the Commissioner's Decision. ReadyLink could not bring the claims asserted in its federal complaint as part of the state proceeding. The state proceeding allowed only a review of the order permitting SCIF's assessment. ReadyLink could not have added causes of action for breach of contract, declaratory relief based on federal preemption, etc. *See McAllister v. Cal. Coastal Comm'n*, 169 Cal. App. 4th 912, 921 (Cal. Ct. App. 2008) (on petition for administrative writ of mandamus, the trial court's review is limited to determining whether the agency proceeded without jurisdiction, whether there was a fair hearing, and whether the agency abused its discretion). To affirm the district court's ruling is to hold that a party must sacrifice its right to review of an administrative proceeding in order to pursue other claims it has every right to assert in a federal court. Nothing in the cases addressing *Younger* suggests that it was intended to create a result so fraught with inherent unfairness and due process concerns. Simply put, ReadyLink has a right to pursue all available remedies and should not be forced to pick between them.

29.

**D.    The State Interests Implicated Here Do Not Meet the *Younger* Test**

Abstention under *Younger* also requires that the state court proceeding at issue implicates an important state interest.  *Potrero Hills*, 657 F.3d at 882.  Here, the district court determined that the "regulation of insurance" was at issue and that it rose to the level of import required by *Younger.*  EOR0007.  This, we submit, was also error.

Obviously, any question of law or subject at issue to be adjudicated is "important."  It is equally true, however, that not every issue will meet the *Younger* test.  In *Potrero Hills*, this Court clarified the type of issue that constitutes an "important state interest" for *Younger* abstention purposes.   657 F.3d at 882.  Although *Younger* has been extended to certain civil contexts, it does not "apply generally to ordinary civil litigation."  *Id.*  "The key … is to ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions."  *Id.* at 883.  And "[u]nless interests 'vital to the operation of state government' are at stake, federal district courts must fulfill their 'unflagging obligation' to exercise the jurisdiction given to them."  *Id.*

Only two categories of civil cases have been found to implicate an important state interest for *Younger* purposes: (1) civil enforcement proceedings and (2) civil proceedings involving orders necessary to the state's ability to perform its judicial functions.  *NOPSI*, 491 U.S. at 368; *see also Polykoff v. Collins*, 816 F.2d 1326,

30.

1332-33 (9th Cir. 1987) (outlining two categories of civil proceedings to which *Younger* applies).

This Court confirmed that if the state is not in an enforcement posture, by definition, no vital executive interests are implicated. *Potrero Hills*, 657 F.3d at 885. This is true even where the subject matter of the litigation is important:

> it is not the bare subject matter of the underlying state law that we test to determine whether the state proceeding implicates an "important state interest" for *Younger* purposes. Were that so, then any ordinary civil litigation between private parties requiring the interpretation of state law would pass *Younger* muster. Rather, the content of state laws becomes "important" for *Younger* purposes *only when coupled with the state executive's interest in enforcing such laws*.

*Id.* at 884-85 (emphasis added).

For example, in *Polykoff*, this Court observed that "[a]lthough Arizona's interest in the regulation of obscenity is important, the state action here is not the type of enforcement proceeding that has justified abstention under [*Younger*]." 816 F.2d at 1332. Similarly here, as discussed above, ReadyLink – not the state – initiated the state proceeding. EOR0075 (CAC ¶ 14). Again, the state action here is simply not an enforcement action.

Even assuming the state action was an enforcement proceeding, to meet the *Younger* test, the action must also touch on "*uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures."

31.

*AmerisourceBergen*, 495 F.3d at 1150. Again, something that touches on interests "akin to those involved in criminal prosecutions." *Gilbertson*, 381 F.3d at 975.

Here, the issue was whether SCIF properly swept ReadyLink's *per diem* into "payroll" for insurance premium purposes. EOR0075 (CAC ¶ 14); *see also id.* at 0021. Payroll is an employer function. It is obviously not the exclusive province of the insurance industry. Nor is it a uniquely state interest. Indeed, the very fact that federal regulations address the same issue demonstrates that it is not an exclusively one reserved to the states. "Payroll" is no more unique to the business of insurance than automobile safety.

Further, *Employers' Reinsurance Corp. v. Karussos*, 65 F.3d 796 (9th Cir. 1995), *overruled by Government Employees Insurance Company v. Dizol*, 133 F.3d 1220 (9th Cir. 1998), which the district court cited in support of its finding is distinguishable. EOR0007. That case was a diversity action in which the plaintiff sought declaratory relief regarding insurance *coverage*. *Id.* at 798. It did not involve a constitutional claim. And the policy statement to which the district court cites was in reference to overarching insurance coverage regulation. *Id.* at 799. In fact, later, in overruling a portion of the holding in *Employers' Reinsurance*, this Court stated "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Government Emps. Ins.*, 133 F.3d at 1225. Indeed, "not every insurance-related issue will satisfy *Younger*'s

'important state interest' prong." *Burlington Ins. Co. v. Panacorp, Inc.*, 758 F. Supp. 2d 1121, 1133 (D. Haw. 2010). Here, the one sliver of the USRP regarding the treatment of *per diem* for purposes of calculating premiums is one such issue that does not qualify as an "important state interest."

Simply because a state proceeding "involves the interpretation of completed legislative or executive action" does not implicate an important state interest. *Gilbertson*, 381 F.3d at 977. Likewise, no vital judicial interests are implicated. "To establish a vital interest in the state's judicial functions, an abstention proponent must assert more than a state's generic interest in the resolution of an individual case or in the enforcement of a single state court judgment." *Potrero Hills*, 657 F.3d at 886. Indeed, it is well established that the importance of the state interest at stake is measured "by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003). "[A] challenge[] [to] only one [] order, not the whole procedure ... is not a substantial enough interference with [the state's] administrative and judicial processes to justify abstention." *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984).

Here, ReadyLink does not argue that the state proceeding itself is unconstitutional. It challenges the constitutionality of the Commissioner's

33.

Decision because it conflicts with federal law. In other words, ReadyLink does not challenge the Department of Insurance's right to conduct administrative proceedings, only the specific content of the Commissioner's specific decision resulting from the administrative proceeding.[5]  Accordingly, the state proceeding does not involve uniquely state interests within the meaning of the *Younger* doctrine.

### E.  ReadyLink Had No Opportunity to Adequately Litigate the Preemption Issue in State Court

The district court erred when it found that the third *Younger* requirement was satisfied. The issue is not whether ReadyLink could have raised the federal preemption issue in some theoretical sense. The issue is whether ReadyLink had an "adequate" forum to adjudicate the issue. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here, from both a practical and legal perspective, the state case did not provide ReadyLink with an opportunity to fairly and adequately litigation the preemption issue.

#### 1.  The Preemption Issue Did Not Arise Until *After* the Commissioner Issued His Decision; Thus, ReadyLink Could Not Have Raised It at the Administrative Proceeding

ReadyLink could not have raised and litigated the preemption issue at the administrative agency level because the basis for the preemption issue did not yet

---

[5] The *Potrero Hills* court noted that it was unaware of any cases in which *Younger* applied based on a vital legislative interest. 657 F.3d at 887. Similarly, ReadyLink is unaware of any vital legislative interests implicated here.

exist. ReadyLink does not allege that the plain language of the USRP is *per se* preempted by federal law. EOR0076-77 (CAC ¶ 17-19). To the contrary, the USRP's stated requirement that *per diem* be "reasonable" can peacefully coexist with the IRS Regulations. The preemption issue arose only *after and because of* the Commissioner's Decision redefining the USRP to require the very type of red-tape documentation, etc. that the IRS Regulations are intended to eschew. Obviously, ReadyLink could not have argued to the administrative agency that the Commissioner's Decision was preempted because the Commissioner's Decision did not yet exist.

> **2.    Neither the Administrative Law Judge nor the Insurance Commissioner Could, as a Matter of Law, Have Ruled on the Preemption Issue**

Even assuming the basis for preemption existed at the time of the administrative hearing, neither the administrative law judge nor the Insurance Commissioner himself have the authority, as a matter of law, to decide questions of federal law such as preemption. Article III, section 3.5 of the California Constitution precludes agencies such as the Department of Insurance from deciding issues of federal preemption:

> An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:
>
> … (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a

35.

determination that the enforcement of such statute is prohibited by
federal law or federal regulations.

Cal. Const. Art. III § 3.5.   Indeed, the Commissioner himself conceded in his

supplemental briefing below that ReadyLink's preemption claim could not be

raised at the administrative level.

### 3.   Writ Review Offered No Adequate Opportunity to Litigate Preemption

The district court made three erroneous assumptions with respect to this

issue.   First, the district court assumed that ReadyLink never attempted to raise

preemption *at any point* in the state case.   EOR0008-09.   This is important because

from that assumption the district court reasoned that it should "assume that the

state procedures will afford an adequate remedy."   *Id.*   But ReadyLink *did* raise

preemption on appeal in the state case and again in its petition to the California

Supreme Court.   MJN, Ex. 1, pp. 17-23; p. 8 of Court of Appeal opinion (attached

to petition).   To be sure, ReadyLink argued that preemption should be decided in

the federal case but there is no doubt that it raised and argued the substance of the

preemption issue in the state case.   The fact that the nature of the state proceeding

itself precluded ReadyLink from an *adequate* hearing of the issue does not change

the fact that ReadyLink has made every attempt to have the issue fairly heard.

Second, the district court understood the preemption argument to be a pure

"legal issue, not a factual one."   EOR0008.   But as the federal complaint and the

briefing below make clear, ReadyLink is *not* making a facial challenge to the USRP. ReadyLink is arguing that the burdens associated with complying with the Commissioner's Decision effectively deprives employers of the benefits of the federal IRS Regulations. This is not a case where the preemption issue requires a simple comparison of the plain language of a federal statute to the plain language of a state statute. The issue is whether the Commissioner's Decision impacts the operations of ReadyLink and other employers such that it creates an "obstacle" to enjoyment of the benefits provided for by federal law. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873-74 (2000). Thus, the presentation of evidence is critical to adequate determination of the issues. For example, ReadyLink has a right to muster and present evidence that the real world burdens of complying with the Commissioner's Decision are substantial and, if effect, operate such that employers cannot enjoy the safe harbors created under the IRS *per diem* regulations. *See, e.g., Chae v. SLM Corp.*, 593 F.3d 936, 948 (9th Cir. 2010) (reviewing a party's method of calculating interest in analyzing whether there is a conflict with federal law). Thus, the district court's observation that "ReadyLink's documentation practices are not actually at issue in this case" is wrong. EOR0008. ReadyLink has the right to prove its preemption claim through evidence of real work impact; it

is not, as the district court assumes, limited to a side by side comparison of the state and federal rules. *See Geier*, 529 U.S. at 873-74 (2000).[6]

That brings us to the district court's third mistaken assumption. The district court assumed that California Civil Procedure Code section 1094.5 provided ReadyLink with an adequate opportunity to litigate the preemption issue at the writ review stage.

It is true as a broad proposition that in some circumstances a constitutional challenge may be raised in a court proceeding following the administrative process. That general proposition, however, is a far cry from satisfying the *Younger* abstention element in this case. Again, the focus of *Younger* is not whether there is a theoretical possibility of raising the issue, the question is whether the state proceeding affords an "*adequate*" forum for a fair hearing of the issue. *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432.

On a petition for administrative writ of mandamus, the review of the California state superior and appellate courts is limited both in legal and factual scope. *See* Cal. Civ. Proc. Code § 1094.5. Their task is only to ascertain whether

---

[6] Further, even if this were a case of pure facial preemption, it is not clear that the result would be any different. *See NOPSI*, 491 U.S. at 372 (stating that a "facial challenge to an allegedly unconstitutional statute … would assuredly not [be] require[d] to be brought in state courts."); *see also Hawaii Housing Authority v. Midkiff*, 467 U.S 229, 237 (1984) ("Since 'the naked question, uncomplicated by [ambiguous language], is whether the Act on its face is unconstitutional,' [citation] abstention from federal jurisdiction is not required.").

the facts contained in the administrative record support the agency's decision, or whether the law supports the agency's decision. *See McAllister*, 169 Cal. App. 4th at 921. The only possible basis for admitting additional evidence is found in Civil Procedure Code section 1094.5(e). Even that, however, opens only a "narrow, *discretionary* window for additional evidence." *Helene Curtis, Inc. v. Los Angeles Cnty. Assessment Appeals Bd.*, 121 Cal. App. 4th 29, 37 (Cal. Ct. App. 2004) (citation omitted). And, as demonstrated below, it offers no meaningful recourse here.

First, Civil Procedure Code section 1094.5(e) provided no mechanism to introduce additional evidence in this case. Section 1094.5(e) allows a court either to remand the case to be considered in light of the new evidence or consider the evidence itself but only if the court is authorized to exercise its independent judgment. Here, remanding would be futile because, as discussed above, the California Constitution prohibits administrative law judges and the Commissioner from deciding issues of federal preemption.

The only other possible basis for admitting new evidence under section 1094.5(e) is if it is a matter over which the trial court is authorized by law to exercise its "independent judgment" as opposed to reviewing the record for error. Both the trial court and the California Court of Appeal agreed with Respondents and held that this was a matter where the trial court was *not* authorized to use its

independent judgment. MJN, Ex. 1, pp. 6-7 of Court of Appeal opinion (attached to petition).

Even setting those issues aside, section 1094.5 authorizes only *discretion* to admit only evidence "relevant" to the administrative hearing. Again, neither the ALJ nor the Commissioner can decide issues of federal preemption. Evidence relating to that issue is obviously not relevant to the administrative proceeding. It is difficult to imagine a court exercising its discretion to allow evidence on an issue that could not have been decided in the very proceeding giving rise to the writ before the court.

In short, the *discretionary* ability of a trial court to entertain evidence *relevant* to the administrative proceeding below *only* where the law authorizes the trial court to review a writ under its independent judgment is a far cry from an adequate forum to litigate the federal preemption issue in this case: the evidence was not relevant to the administrative proceeding below because the administrative law judge and the Commissioner were precluded by the state constitution from deciding that issue; the trial court was *not* authorized to review the matter in its independent judgment; and, in any event, *discretion* cannot reasonably be viewed as an adequate procedural safeguard for presenting a federal constitutional claim.

## F.    The Federal Action Would Not Enjoin the State Court Proceeding

The fourth and final *Younger* requirement is that the federal action "would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *AmerisourceBergen*, 495 F.3d at 1149. Here, the district court erred in finding this "vital and indispensable fourth element" (*id.*) was satisfied.

First, the district court erred in finding that the possibility of different outcomes was sufficient to abstain. The Ninth Circuit addressed and rejected this principle in *AmerisourceBergen*. *Id.* at 1151-52. There, the Court observed:

> Roden's counterargument – that the requisite "interference with ongoing state proceedings" occurs whenever the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it – has also been rejected…. [Citation]

> [T]he possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of "exceptional" circumstances [citation], ... that possibility alone is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them.

*Id.* at 1151 (quoting *Green*, 255 F.3d at 1097). Further, "the Supreme Court has rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court merely because whichever court rules first will, via the doctrines of res judicata and collateral

estoppel, preclude the other from deciding that claim or issue."[7]  *Id.*; *see also Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 71 (1st Cir. 2005) ("Normal res judicata effects of federal actions on state actions … are of course not enough to trigger *Younger*.") (citing *NOPSI*, 491 U.S. at 373).

The district court viewed *AmerisourceBergen* as distinguishable on the ground that it dealt only with a *potential* conflict.  EOR0009.  However, any time there are two suits, there is a potential for conflict.  This does not justify abstention.  "As the Supreme Court has held, 'the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction,' much less abdicating it entirely."  *AmerisourceBergen*, 495 F.3d at 1151 (quoting *Colorado River*, 424 U.S. at 816).  And here, the district court's finding that there "is an actual conflict" is inappropriate because no substantive decisions have been made in this case, nor has the state case been finally determined.

---

[7] Here, we submit, that a final adverse ruling the state case would not have res judicata or collateral estoppel effects in this case precisely because the preemption issue was not actually and/or adequately litigated.  *See Allen v. McCurry*, 449 U.S. 90, 95 (1980) (noting that the Court has repeatedly recognized that "collateral estoppel cannot apply where the party against whom the earlier decision is being asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case.") (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979); *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003) (same).  The larger point here, however, is that Respondents' belief that collateral estoppel or res judicata issues *may* arise in the *future* is no basis for *Younger* abstention *now*.

An equally fundamental point is that ReadyLink's federal action does not seek and never has sought to enjoin the state court proceeding. In no sense can the federal case be viewed as an attempt to shut down a state proceeding. ReadyLink is challenging the *result* of a state proceeding because, we submit, it is unconstitutional. *Cf. Younger v. Harris*, 401 U.S. 37, 39 (1971) (seeking to enjoin state court proceedings); *and Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 6 (1987) (seeking to enjoin enforcement of the state court judgment).

Furthermore, ReadyLink's federal complaint seeks declaratory relief, which will affect insurance premium assessments *in the future*. (*See* CAC ¶ 38 ("Plaintiff seeks a declaration or decree that Defendants' practice and policy set forth above is not permitted by federal law *and may not continue*.") (emphasis added). This case is analogous to *Wooley v. Maynard*, 430 U.S. 705 (1977). There, plaintiffs were convicted of violating a state license plate statute three times. *Id.* at 708. After the third time, plaintiffs filed an action in federal court seeking a declaration that the license plate statute was unconstitutional. *Id.* at 709. The Court upheld the district court's decision not to abstain because "the suit is in no way 'designed to annul the results of a state trial' since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights." *Id.* at 711.

Moreover, rather than try to shut down the state court proceeding, ReadyLink has kept the state court proceeding alive by continuing to utilize the state appellate process. Where the federal plaintiff is simultaneously pursuing state court relief, *Younger* abstention is inapplicable:

> "In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings." [Citation] In this case, on the other hand, the federal plaintiffs ... are also the state plaintiffs. Moreover, they are not seeking to enjoin any state judicial proceeding; instead, they simply desire to litigate what is admittedly a federal question in federal court....

*Kentucky West Virginia Gas Co. v. Pennsylvania Pub. Util. Comm'n*, 791 F.2d 1111, 1117 (3d Cir. 1986).

A party can pursue "parallel tracks seeking consistent relief in the federal and state systems." *Marks v. Stinson*, 19 F.3d 873, 884 (3d Cir. 1994) (upholding district court's decision refusing to abstain from motion for preliminary injunction to certify an election candidate the winner despite pendency of two state court proceedings challenging the propriety of the election because the two actions could co-exist). And that is what ReadyLink is doing here.

44.

## VIII. CONCLUSION

For the foregoing reasons, ReadyLink respectfully requests this Court reverse the decision of the district court and remand to the district court to permit ReadyLink to litigate the merits of its claims for relief.

Dated:      December 31, 2012          COOLEY LLP


By:


s/Seth A. Rafkin
Seth A. Rafkin


Attorneys for Appellant
ReadyLink Healthcare, Inc.

## IX.  STATEMENT OF RELATED CASES

To the best of ReadyLink's knowledge there are no related cases pending before the Ninth Circuit.

## X.    CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and (C), attached is Form 6 in the Appendix of Forms.

791167/SD

**Form 6.    Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains <u>10,333</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* <u>Microsoft Office Word 2007</u> *(state font size and name of type style)* <u>size 14 Times New Roman</u> *, or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)*

_____ .

Signature │ s/Seth A. Rafkin

Attorney for │ Appellant ReadyLink Healthcare, Inc.

Date │ December 31, 2012