No. 12-56248

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

READYLINK HEALTHCARE, INC.,

*Appellant,*

versus

STATE COMPENSATION INSURANCE FUND, ET AL.,

*Appellees.*

---

On Appeal From the United States District Court for the
Central District of California
District Court Case No. 2:11-cv-09934 PSG (FJWx)

---

# APPELLANT READYLINK HEALTHCARE, INC.'S REPLY BRIEF

## TO STATE COMPENSATION INSURANCE FUND'S AND DEPARTMENT OF INSURANCE'S

## ANSWERING BRIEFS

---

COOLEY LLP
SETH A. RAFKIN (srafkin@cooley.com)
JENNIFER M. BOGUE (jbogue@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
(858) 550-6000 (telephone)
(858) 550-6420 (facsimile)

*Attorneys for Appellant*
ReadyLink Healthcare, Inc.

# TABLE OF CONTENTS

**Page**

I.   YOUNGER IS THE ONLY ISSUE BEFORE THIS COURT, AND ITS STRICT REQUIREMENTS ARE NOT MET ........................................ 1

   A.   There Is No State-Initiated Proceeding ................................................. 1

   B.   The State Proceedings Are Not Ongoing ............................................. 6

       1.   The Administrative Proceedings Were Concluded When The Federal Action Began ........................................................ 7

       2.   Huffman Is Not Controlling Or Persuasive .............................. 8

   C.   The State Proceedings Do Not Implicate Important State Interests Within The Meaning Of Younger ........................................ 10

   D.   The State Proceedings Did Not Provide An Adequate Opportunity to Litigate ReadyLink's Federal Claim .......................... 14

   E.   This Case Will Not Enjoin The State Proceedings Or Have The Practical Effect Of Doing So ................................................................. 17

II.   RES JUDICATA AND THE SUBSTANCE OF READYLINK'S PREEMPTION CLAIM WERE NOT BEFORE THE TRIAL COURT AND CANNOT BE RAISED FOR THE FIRST TIME ON APPEAL ........ 19

   A.   Appellate Review Is Limited To The Issues Properly Raised Below .................................................................................................... 20

   B.   Respondents Did Not Raise Res Judicata Below And Should Not Be Permitted To Argue It Here .................................................... 20

   C.   Raising Res Judicata Does Not Eviscerate The Court's Ability To Address Younger ........................................................................... 22

   D.   Res Judicata Does Not Apply ............................................................. 23

   E.   The Merits of Preemption Were Not Before The District Court And Should Not Be Considered Here ................................................. 26

III.   CONCLUSION .............................................................................................. 29

i.

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Alloure, Inc. v. FA Cooperative, Inc.*,
 438 Fed.Appx. 571 (9th Cir. 2011) .................................................21

*American Heritage Life Ins. Co. v. Orr*,
 294 F.3d 702 (5th Cir. 2002) ........................................................28

*AmerisourceBergen Corp. v. Roden*,
 495 F.3d 1143 (9th Cir. 2007) ...........................................1, 18, 19

*Baccei v. U.S.*,
 632 F.3d 1140 (9th Cir. 2011) ......................................................20

*Brown v. Day*,
 555 F.3d 882 (10th Cir. 2009) ..............................................4, 5, 6

*Champion Int'l Corp. v. Brown*,
 731 F.2d 1406 (9th Cir. 1984) ......................................................12

*Colorado River Water Cons. Dist. v. U.S.*,
 424 U.S. 800 (1976)..............................................................19, 21

*Delta Dental Plan of Cal., Inc. v. Mendoza*,
 139 F.3d 1289 (9th Cir. 1998) ...................................................3, 4

*Doe v. Holy See*,
 557 F.3d 1066 (9th Cir. 2009) ......................................................22

*Foti v. City of Menlo Park*,
 146 F.3d 629 (9th Cir. 1998) ........................................................21

*Geier v. Am. Honda Motor Co.*,
 529 U.S. 861 (2000)......................................................................15

*Gilbertson v. Albright*,
 381 F.3d 965 (9th Cir. 2004) ..........................................................1

*Hanover Ins. Co. v. Comm. of Internal Revenue*,
 65 T.C. 715 (1976)........................................................................28

*Harris v. Alvarado*,
402 Fed.Appx. 180 (9th Cir. 2010)......................................................21

*Hifai v. Shell Oil Co.*,
704 F.2d 1425 (9th Cir. 1983) ...................................................20, 27

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975)...........................................................5, 8, 9, 10

*In re Home Am. T.V.-Appliance Audio, Inc.*,
232 F.3d 1046 (9th Cir. 2000) ......................................................20

*Juidice v. Vail*,
430 U.S. 327 (1977)......................................................................11

*Kremer v. Chemical Constr. Corp.*,
456 U.S. 461 (1982).......................................................................24

*Majors v. Engelbrecht*,
149 F.3d 709 (7th Cir. 1998) ............................................................6

*Martori Bros. Distrib. v. James-Massengale*,
791 F.2d 1349 (9th Cir. 1986), *as amended*, 791 F.2d 799...................11, 13, 14

*Maymo-Melendez v. Alvarez-Ramirez*,
364 F.3d 27 (1st Cir. 2004).............................................................6

*McAllister v. Cal. Coastal Comm'n*,
169 Cal.App.4th 912 (Cal. Ct. App. 2008)...................................9, 26

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982)........................................................................16

*New Mexico State Investment Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) .........................................................22

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
491 U.S. 350 (1989)................................................................4, 5, 11

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*
477 U.S. 619 (1986).........................................................................11

*Pennzoil Co. v. Texaco, Inc.*
481 U.S. 1 (1987)................................................................................................11

*People of State of Cal. v. F.C.C.*,
905 F.2d 1217 (9th Cir. 1990) ...................................................................24, 26

*Polykoff v. Collins*,
816 F.2d 1326 (9th Cir. 1987) ...........................................................................11

*Potrero Hills Landfill, Inc. v. County of Solano*,
657 F.3d 876 (9th Cir. 2011) ...........................................................1, 10, 11, 12

*Rotec Industries, Inc. v. Mitsubishi Corp.*,
348 F.3d 1116 (9th Cir. 2003) ...........................................................................21

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v.
City of San Jose*,
546 F.3d 1087 (9th Cir. 2008) .......................................................................1, 6

*Scroggins v. State of Kansas*,
802 F.2d 1289 (10th Cir. 1986) .................................................................24, 25, 26

*Singleton v. Wulff*,
428 U.S. 106 (1976)..........................................................................................20

*Tarrant Regional Water Dist. v. Sevenoaks*,
545 F.3d 906 (10th Cir. 2008) ...........................................................................23

*Taylor v. Alabama*,
275 Fed.Appx. 836 (11th Cir. 2008).............................................................15, 16

*Thomas v. Texas State Board of Medical Examiners*,
807 F.2d 453 (5th Cir. 1987) ...............................................................................8

*Turnbow v. Pacific Mut. Life Ins. Co.*,
934 F.2d 1100 (9th Cir. 1991) .....................................................................22, 23

*United States v. Elias*,
921 F.2d 870 (9th Cir. 1990) .............................................................................20

*Weber v. Van Fossen*,
322 Fed.Appx 429 (6th Cir. 2009).....................................................................23

*Whittaker Corp. v. Execuair Corp.*,
   953 F.2d 510 (9th Cir. 1992) ...............................................................................20

*World Famous Drinking Emporium v. City of Tempe*,
   820 F.2d 1079 (9th Cir. 1987) ...........................................................................12

STATUTES

15 U.S.C. § 1012 ....................................................................................................27

18 U.S.C. § 287 .......................................................................................................6

Cal. Code Civ. Proc. § 1094.5 ........................................................................17, 26

Cal. Health & Saf. Code
   § 1391(a) ............................................................................................................3
   § 1391(b) ............................................................................................................3

Cal. Ins. Code § 11737(f) .......................................................................................2

CONSTITUTIONS

Cal. Const. Article III, § 3.5.............................................................................9, 16

I. *YOUNGER* **IS THE ONLY ISSUE BEFORE THIS COURT, AND ITS STRICT REQUIREMENTS ARE NOT MET**

The only issue before this Court is whether the district court properly abstained under *Younger*. It is clear that all four *Younger* requirements must be "strictly met" before a court may take the exceptional act of abstaining. *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011); *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007). Here, Respondents provide no basis to conclude that *any* of the four *Younger* factors are met.

A. **There Is No *State-Initiated* Proceeding**

This much is indisputable: there is no *state-initiated* proceeding. The Commissioner himself concedes this point. *See* Department of Insurance Answering Brief ("DOI Br.") 8-10.[1] The district court found that *ReadyLink*, not

---

[1] The Commissioner argues that the state-initiated requirement is "not important," citing *Potrero Hills*. DOI Br. 8. *Potrero Hills* held no such thing. In *dicta* in a footnote, the *Potrero Hills* court indicated that the "state-initiated" requirement may be more appropriately considered under *Younger's* second prong considering "important state interests." 657 F.3d at 883 n.7. Although the Court has historically considered whether the proceedings are state initiated under the first prong (*see San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) ("*San Jose*") (the first requirement under Younger is whether "a state-initiated proceeding is ongoing") and *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (*Younger* applies only when "a state-initiated proceeding is ongoing")), the critical point is that it remains a vital component to assessing whether the state proceedings are of a kind entitled to *Younger* deference.

the state, initiated the administrative proceedings and the subsequent appeal. EOR0002; 0005 ("After SCIF's change in policy, *ReadyLink* filed a request with the California Department of Insurance to review SCIF's action. . . . ReadyLink itself *initiated* the state civil proceeding by filing a writ of mandamus.") (Emphasis added). Only SCIF argues that the administrative proceedings were initiated by the state, and its argument fails.

SCIF maintains that when the Commissioner convened a hearing at ReadyLink's request, he "initiated" a state enforcement proceeding. SCIF Answering Brief ("SCIF Br.") 27-28. Such an argument is contrary to the record, the district court's findings, and common sense. The Commissioner no more "initiated" the administrative process than this Court "initiated" ReadyLink's current appeal.

The record is clear that ReadyLink, not the Commissioner, initiated the state proceedings at every level. This dispute began when SCIF audited ReadyLink's payroll records pursuant to its contractual right to do so. EOR0033; 0074-75. As a result of the audit, SCIF assessed ReadyLink over $555,000 in additional premiums. *Id.* at 0035.

Accordingly, *ReadyLink* appealed the audit decision to the Department of Insurance as dictated by the California Insurance Code. *See* Cal. Ins. Code §11737(f); *see also id.* § 11750 *et seq*. Thus, as the Commissioner concedes,

2.

"Appellant [ReadyLink] *initiated* these proceedings on April 16, 2008, by filing a written appeal to the Insurance Commissioner from SCIF's February 28, 2008 decision affirming the findings of Appellant's 2005 audit." EOR0023 (emphasis added).

SCIF's reliance on *Delta Dental* is misplaced. There, the dispute began when the Commissioner of Corporations *issued a cease and desist Order* to Delta Dental, "requiring it to stop committing alleged violations of the Knox-Keene Act" pursuant to California Health & Safety Code section 1391(a). *Delta Dental Plan of Cal., Inc. v. Mendoza*, 139 F.3d 1289, 1293 (9th Cir. 1998). Section 1391(a)(1) provides "[t]he director may issue an order directing a plan . . . or any other person to cease and desist from engaging in any act or practice in violation of the provisions of this chapter." Delta Dental's *only* recourse to the state-issued Order was to request a hearing to defend itself against the alleged violations. *See* Cal. Health & Safety Code § 1391(b) (party at whom a cease and desist order is directed has 30 days to file a written request for a hearing, or else the order shall "not be subject to review by any court or agency"). Dental Dental's participation in the administrative proceeding was not truly voluntary, and was a direct result of the state (the Commissioner) taking proactive steps to enforce the Knox-Keene Act against it.

3.

*Delta Dental* is inapposite where, as here, ReadyLink voluntarily availed itself of the administrative process, asking the Commissioner to review a dispute arising out of an insurance contract with its carrier. As SCIF acknowledges, the hearing was an exercise of Commissioner's *quasi-adjudicatory*, not executive, power. SCIF Br. 27-28.[2]

SCIF's efforts to distinguish *Brown v. Day* are unavailing. *Brown* presents a nearly identical procedural posture. ReadyLink, like Brown, sought administrative review of a decision by its insurer with which it disagreed. *Brown v. Day*, 555 F.3d 882, 886 (10th Cir. 2009). Both parties' participation in the administrative process was truly voluntary. *Id.* at 893. The administrative agency (the Commissioner) found against ReadyLink, just as it did Brown. When challenging the agency decision in federal court, both argued that the Commissioner's *decision*, not his proceedings, violated federal law. *Id.* at 884. It follows that ReadyLink's

---

[2] SCIF then attempts to characterize the Commissioner's *decision* (rather than the hearing) as an exercise of his "executive" power, because he was "enforcing" the USRP. SCIF Br. 28. That is simply not the case. A tribunal's judicial authority does not transform into executive simply because it interprets the law and renders a decision. Further, if the *Commissioner's Decision* constituted executive action, then reversal of the district court is warranted. *Younger* abstention is clearly not appropriate in favor of executive action or state review thereof. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). ("It has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the . . . exceptional circumstances [requirement].")

appeal, like Brown's, is simply not the type of state proceeding entitled to *Younger* deference.

SCIF seeks to distinguish *Brown* (and similar cases) because there the federal plaintiff had not committed a "bad act." This, we submit, supports ReadyLink's position rather than SCIF's.

The "bad act" requirement stems from the criminal underpinnings of *Younger*, and grows out of the requirement that a state civil suit entitled to *Younger* deference must be a *state-initiated enforcement proceeding*. *See NOPSI*, 491 U.S. at 368; *Brown*, 555 F.3d at 893. When the state brings criminal or civil enforcement charges, the defendant is by definition accused of some conduct that is either criminal or "closely related" thereto, which the state has initiated proceedings to try to stop. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).

SCIF cannot credibly argue that the alleged failure to substantiate *per diem* payments to SCIF's satisfaction under the USRP – which itself excludes *per diem* from wages for premium purposes (*see* EOR0037) – is a requisite "bad act" under *Younger*. At issue here is the same *per diem* practice that five previous audits by SCIF *approved*, and the same *per diem* practice with which an IRS audit found no fault. EOR0036; 0074; 0077. And, it is an issue that *ReadyLink itself* brought to the Commissioner.

5.

The "bad act" cases SCIF relies on stand in stark contrast to the facts here. In *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 29 (1st Cir. 2004), an administrative agency brought charges against Maymo-Melendez for administering performance enhancing drugs to horses. In *Majors v. Engelbrecht*, 149 F.3d 709, 710 (7th Cir. 1998), the state brought proceedings to revoke the license of a hospital nurse accused of euthanizing elderly patients. In each case the federal plaintiff was also a defendant accused of illegal conduct in a state criminal or quasi-criminal proceeding.

ReadyLink is not accused or charged with fraud or any other crime. The state proceedings involve the Commissioner's interpretation and application of the USRP to ReadyLink's *per diem* payments. SCIF's argument is no more persuasive than urging the plaintiff in *Brown* – who contested the termination of her Medicaid benefits – committed a "bad act" because the False Claims Act (18 U.S.C. § 287) makes it a crime to make false statements on a government application.

### B. The State Proceedings Are Not Ongoing

*Younger* only applies where the state-initiated proceeding is ongoing. *San Jose*, 546 F.3d at 1092. Again, it is an open question whether a proceeding is "ongoing" when the administrative proceedings have concluded but appellate review remains available. *Id.* at 1093.

SCIF argues that asking whether the state proceedings were "ongoing" is the wrong question. SCIF Br. 32. We agree. Because ReadyLink (not the state) initiated the administrative hearing process and subsequent review, the state proceedings are not the type to which *Younger* deference applies. Therefore, the first prong of *Younger* is not met regardless of whether the proceedings are ongoing. Nonetheless, the district court considered this issue and thus we do as well.

### 1. The Administrative Proceedings Were Concluded When The Federal Action Began

First, it is not clear in this Circuit that *Younger* applies *after* the administrative proceedings have concluded. Thus, we submit, the district court erred by focusing on this particular element of *Younger's* first prong to the exclusion of all others. Respondents do not even agree amongst themselves what renders the state proceedings ongoing for *Younger* purposes. SCIF argues the proceedings are ongoing because the state *court* proceedings were underway when the federal action was filed. SCIF Br. 32. The DOI argues that the mere availability of appeal after an administrative hearing should render the state proceedings ongoing. DOI Br. 9.

Here, there is no doubt the administrative proceedings were concluded prior to ReadyLink's federal complaint. Appellate review of the *result* of an administrative proceeding does not implicate the concerns underlying *Younger*, i.e.

7.

the need to prevent the federal courts from halting state criminal enforcement proceedings. *See e.g., Thomas v. Texas State Board of Medical Examiners*, 807 F.2d 453, 456 (5th Cir. 1987). This is particularly true where, as here, the administrative proceeding grew out of a contractual dispute between two private parties.

### 2. *Huffman* Is Not Controlling Or Persuasive

SCIF argues *Huffman* is "on point," and strains to bring this case within *Huffman's* ambit by (again) arguing that the Commissioner "initiated" the state proceedings when he convened a hearing. SCIF Br. 34-35. As detailed above, this argument fails. Indeed, the district court itself found *Huffman* was not wholly controlling of the issue, because in *Huffman* "the state court proceeding had been initiated by state officials, whereas ReadyLink voluntarily chose to file for a writ of mandamus in state court." EOR0006.

Respondents urge this Court to accept the district court's reliance on *Huffman* in that a federal trial would be highly duplicative because an "entire trial has already taken place." EOR0006 (quoting *Huffman*, 420 U.S. at 609); SCIF Br. 33-34; DOI Br. 9. Here, however, the record does not support that an "entire trial has already taken place" on *any* of the claims in ReadyLink's federal complaint.

ReadyLink's complaint alleges federal preemption, breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair

competition. The *sole* issue before the administrative law judge – the only arguable "trial" that has taken place – was the correct interpretation of the USRP and whether ReadyLink's actual *per diem* payments met the requirements of the USRP's subsistence payment rule. EOR0021-22. The federal preemption claim was not at issue before the ALJ, nor could it have been. *See* Cal. Const. Art. III, § 3.5.

On appeal, writ review was limited to the order permitting SCIF's premium assessment. *See McAllister v. Cal. Coastal Comm'n*, 169 Cal.App.4th 912, 921 (Cal. Ct. App. 2008). ReadyLink could not have added causes of action for breach of contract, declaratory relief based on federal preemption, etc. And, as further discussed below, while ReadyLink raised its preemption argument to the California Court of Appeal and Supreme Court, those courts do not provide an adequate forum.[3] As critical under *Huffman*, they indisputably did *not* amount to a full fledged trial of the federal claims – including discovery and an opportunity to muster and present evidence – on which the notions of comity and federalism in *Huffman* are based.

---

[3] The DOI insinuates that the Court of Appeal "independently decided" that the Commissioner's decision was not preempted by federal law. DOI Br. 9. That is not the case. The Court of Appeal determined that the trial court did not err in finding the Commissioner's decision (which had nothing to do with preemption, let alone a trial thereon) was supported by substantial evidence.

9.

In particular, there is no evidence that in *Huffman*, like here, the federal plaintiff was *precluded* from having its federal constitutional challenge decided by the tribunal in which the trial took place. Indeed, it appears that in *Huffman* the federal plaintiffs could have taken discovery and submitted evidence in support of its constitutional argument at the state trial level, a forum able to decide the constitutional issue. *See Huffman*, 420 U.S. at 598, 609. Accordingly, the notions of comity and duplication on which *Huffman* turned are simply not present here.

### C. The State Proceedings Do Not Implicate Important State Interests Within The Meaning Of *Younger*

Respondents maintain, as did the district court, that the workers' compensation system and insurance in general are "important" to California. On that basis alone they argue *Younger's* second prong is met.

In addition to criminal prosecutions, only two categories of civil cases have been found to implicate important state interests for *Younger* purposes: (1) civil enforcement proceedings, i.e. those in aid of or closely related to a criminal proceeding,[4] and (2) civil proceedings involving orders necessary to the state's ability to perform its judicial functions.[5] *NOPSI*, 491 U.S. at 368; *Polykoff v.*

---

[4] In this respect the second prong of *Younger* often overlaps with the first, i.e. only when the state *initiates* action to enforce its criminal or closely related laws are the state interests "important" for *Younger* purposes. *See e.g., Potrero Hills*, 657 F.3d at 881-82.

[5] These are cases that challenge "the very processes by which the state [seeks] to compel compliance with the judgments of its courts," such as the state's

*Collins*, 816 F.2d 1326, 1332-33 (9th Cir. 1987); *accord Martori Bros. Distrib. v. James-Massengale*, 791 F.2d 1349 (9th Cir. 1986), *as amended*, 791 F.2d 799, *overruled, in part, on other grounds by Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc*., 477 U.S. 619, 627 n.2 (1986).  The state proceedings at issue here plainly do not fall into either of these categories.

Only SCIF asserts that the state proceedings here are of either type of civil proceeding to which *Younger* has been applied.  SCIF argues important state interests are implicated because "the Insurance Commissioner convened an administrative hearing specifically *in order to enforce* the USRP."  SCIF Br. 39 (emphasis in original).  This argument fails.  As detailed above, the state did not initiate any proceeding – criminal or otherwise – against ReadyLink.[6]  EOR0002; 0005.

Further, even assuming for a moment that the Commissioner's act of convening a hearing constitutes state action, such action was not even arguably in

---

"wholesale interest in preserving its procedure for posting an appeal bond" or in "enforcing the orders and judgments of its courts through the contempt process." *Potrero Hills*, 657 F.3d at 886 (*citing Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1, 12-14 (1987) and *Juidice v. Vail*, 430 U.S. 327, 335-36 & n.12 (1977)).  Critically, where deference is found appropriate, the state cases have "challenge[d] *the very process by which* those [state] judgments were obtained." *Id.* at 886.

[6] SCIF's attempt to distinguish *Potrero Hills* and *Polykoff* are unavailing.  Again, SCIF relies on its misguided interpretation of ReadyLink's appeal to the Commissioner as a "state-initiated" proceeding.  *See, supra*, section I.A.

aid of or closely related to a criminal proceeding. *See World Famous Drinking Emporium v. City of Tempe*, 820 F.2d 1079, 1083 (9th Cir. 1987) (noting that a salient guidepost is whether the state had a choice between proceeding criminally or civilly against the party, and chose the civil route). The purpose of the administrative hearing was to review SCIF's belated premium assessment under the USRP. The USRP is a set of administrative regulations establishing standards for workers' compensation premiums. EOR0021; 0037. It is not a criminal statute. Its interpretation by the Commissioner is neither in aid nor closely related to a criminal proceeding.

Respondents do not urge the state proceedings involve the fundamental operation of the state's judicial functions. *See Potrero Hills*, 657 F.3d at 886 ("[T]he interest at stake must go to the core of the administration of a State's judicial system.") (Internal quotation omitted). Nor could they. ReadyLink does not challenge the Commissioner's right to conduct administrative proceedings, only the constitutionality of the Commissioner's specific decision resulting from the administrative proceeding. This is simply not the kind of fundamental judicial function to which *Younger* dictates abstention. *See, e.g., Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984) ("Here the appellant challenges only one . . . order, not the whole procedure. This is not a substantial enough

interference with Montana's administrative and judicial processes to justify abstention.").

Respondents' primary argument is that the workers' compensation system as a whole is important to California. *See* SCIF Br. 40-43, DOI Br. 9-10. The district court relied on this as well, finding "the broad interest in the state proceeding is the regulation of insurance." EOR0007. However, that finding *alone* does not raise the interest to a level that satisfies *Younger's* "important state interests" requirement. "[A] contrary holding would diminish the significance of the phrase 'extraordinary circumstances' and readily lead to a rule that *Younger* abstention is required *any time* the state demonstrates a clear interest." *Martori Bros. Distrib.*, 781 F.2d at 1355-56, *as amended*, 791 F.2d at 800 (emphasis added).

In *Martori*, this Court recognized that the state has a substantial interest in the protection of agricultural workers under the Agricultural Labor Relations Act.[7] 781 F.2d at 1354. Nevertheless, the Court refused to abstain in favor of state appellate proceedings in which the employer was appealing adverse rulings of the

---

[7] *Martori* involved review of several pending state proceedings, and separately held that proceedings currently pending before the ALRB were not "judicial" in nature, and refused to abstain as to *those* proceedings on that ground. 781 F.2d at 1354. This holding was overturned by *Ohio Civil Rights*. However, as it relates here, *Martori* separately considered parallel state proceedings currently pending before the Courts of Appeal. *Id.* The Court assumed those proceedings were judicial in nature (thus taking it outside of *Ohio's* disagreement), and as to those proceedings, considered the "vital state interests" prong in detail, ultimately holding it was not met. *Id.* at 1354-56, *as amended*, 791 F.2d at 800.

Agricultural Labor Relations Board ("ALRB"). The Court held no vital state interest was involved because the proceedings were not: (a) criminal, (b) in aid of or closely related to criminal proceedings, or (c) of the kind involving the fundamental operation of California's court system. *Martori*, 781 F.2d at 1354-55.

> [W]e have made it clear that our "unflagging obligation" to exercise federal jurisdiction precludes expansion of the *Younger* doctrine except in extraordinary circumstances. [Citations.] We have previously declined to extend *Younger's* reach to encompass other concededly important interests. [Citation.] **Although admittedly the state's interest is important it is not qualitatively as vital or central to the state's interest as is its interest in its criminal justice system or the fundamental operation of its court system. We decline to extend *Younger* here.**

*Id.* at 1355-56, *as amended*, 791 F.2d at 800 (emphasis added).

Further, ReadyLink's challenge of the Commissioner's Decision does not amount to a wholesale attack on the workers' compensation system or insurance regulation in general. Indeed, the USRP, just like federal law, *exempts per diem* from payroll. ReadyLink simply disagrees that in interpreting the USRP the Commissioner may simultaneously deprive ReadyLink of the benefits of federal IRS safe harbor laws afforded California employers.

### D. The State Proceedings Did Not Provide An Adequate Opportunity to Litigate ReadyLink's Federal Claim

*Younger* abstention is only appropriate when the federal plaintiff had an adequate opportunity to litigate its claims in state court. Respondents simply

14.

reiterate the district court's mistaken presumption that preemption is *always* a purely legal issue that does not require the consideration of evidence.

The issue here is not whether the Commissioner's Decision is facially preempted by federal law. Rather, the question is whether the Commissioner's Decision impacts the operations of ReadyLink and other employers such that it creates an "obstacle" to enjoyment of the benefits provided for by federal law. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873-74 (2000). The presentation of evidence is critical to adequate determination of such issues.

*Taylor v. Alabama*, 275 Fed.Appx. 836, 2008 WL 1868083 (11th Cir. 2008) is instructive. There, transporters of manufactured houses sued a state agency ("AHMC") arguing certain administrative regulations were preempted by federal motor carrier law. In reviewing the dismissal of the preemption claim, the Eleventh Circuit remanded with "instructions for additional findings of fact so the issue may be resolved with the benefit of a more complete understanding of the regulations at issue and their impact on motor carriers." *Id.* at 837. In particular, the Eleventh Circuit instructed:

> On remand, the district court should permit further development of the factual record and make findings that include the following matters: (a) Are both of the state requirements at issue regulations that are "related to a price, route or service" within the meaning of § 14501(c)(1)? What facts support this determination?; (b) How do the regulations impact motor carriers? **. . . .** (d) Do the safety concerns expressed in the state regulations at issue relate to the safety of the manufactured home after it is delivered, or do they relate to highway

15.

safety while the home is being delivered? What facts support this conclusion?; (e) What are the articulated safety concerns for the regulations and to what extent do the regulations address those concerns? In particular, what kind of training does the "installer's course" entail?

*Id.* at 842.

The only forum in which ReadyLink was permitted to gather facts, present testimony and evidence, and examine witnesses was the administrative hearing. The administrative proceedings did not provide an adequate forum for ReadyLink's federal claim because state agencies are precluded from passing on constitutional questions.[8] Cal. Const. Art. III, § 3.5.

That leaves only the state courts' administrative writ review process as a potentially "adequate" forum. The issue does not turn, as SCIF contends, on whether ReadyLink attempted to submit a particular piece of evidence and was rejected. The inquiry is whether ReadyLink had an "adequate" forum to adjudicate the issue. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

---

[8] The Commissioner concedes this point but argues nonetheless that ReadyLink "should have been reasonably aware" of the preemption issue and could have raised it notwithstanding that the Commissioner could not have ruled on it. However, ReadyLink does not allege that the plain language of the USRP is *per se* preempted by federal law. EOR0076-77. The preemption issue arose only *after and because of* the Commissioner's Decision. The Commissioner cannot credibly argue that this prong of *Younger* is met because ReadyLink should have anticipated that the Commissioner would issue a decision utterly at odds with IRS regulations substantially similar to the USRP.

Here it plainly did not. The *discretionary* ability of a court to entertain evidence *relevant* to the administrative proceeding below *only* where the law authorizes the court to review a writ under its independent judgment is a far cry from an adequate forum to litigate the federal preemption issue in this case: the evidence was *not* relevant to the administrative proceeding below because the Commissioner was precluded by the state constitution from deciding that issue; the state courts were *not* authorized to review the matter in its independent judgment; and, in any event, *discretion* cannot reasonably be viewed as an adequate procedural safeguard for presenting a federal constitutional claim. *See* Cal. Code Civ. Proc. § 1094.5.

### E. This Case Will Not Enjoin The State Proceedings Or Have The Practical Effect Of Doing So

Respondents concede that this case will not *actually* enjoin the state proceedings. Indeed, ReadyLink has never sought that remedy.[9] Further, at this juncture the state proceedings have ended, and thus there is nothing to enjoin.

---

[9] The DOI claims ReadyLink's federal Complaint seeks "exactly the same relief that it sought in state court." DOI Br. 12. That is simply not true. The state case appealed the decision that ReadyLink's *per diem* is not "reasonable" within the meaning of the USRP. The federal case argues the Commissioner's Decision is preempted by federal law. While ReadyLink raised the preemption issue to the Court of Appeal, it did so only *after* Respondents filed to dismiss the instant case and only to preserve *some* forum for the claim to be heard. ReadyLink has been forthcoming to each forum at every turn, and has consistently maintained that the state forum is not an adequate one to decide the preemption claim.

To *practically* enjoin the state proceedings, the federal court's adjudication must interfere in some way with the carrying on of that proceeding. *See AmerisourceBergen*, 495 F.3d at 1149 n.9. Respondents argue that because the *result* of the federal action might conflict with the *result* of the state proceedings, it has the "practical effect" of enjoining the state proceedings. SCIF Br. 53; DOI Br. 12. However, a conflict of results is not enough. "Indeed, the Supreme Court has rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court merely because whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue." *AmerisourceBergen*, 495 F.3d at 1151.[10]

SCIF relies on the district court's misreading of *AmerisourceBergen*. SCIF Br. 53; EOR0009-10. In *AmerisourceBergen*, the conflict between the federal and state proceeding was only theoretical because the federal plaintiff appealed had not yet appealed in the state proceeding. *AmerisourceBergen*, 495 F.3d at 1151. However, the court went on to hold that the requisite interference with ongoing state proceedings required by *Younger* would not be met *even if* that conflict arose,

---

[10] As discussed below, we submit that the denial of ReadyLink's petition to the California Supreme Court does not have res judicata or collateral estoppel effect. The point here, however, is that even assuming a viable res judicata argument exists, it does not support *Younger* abstention.

i.e. (as phrased by the district court and SCIF) even if it became an "actual" conflict. *See id.* The court noted that Supreme Court authority squarely rejects the notion that *Younger* abstention is warranted whenever "the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it." *Id.*; *see also Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 816 (1976) ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."). Thus, the mere fact that the district court here may find differently on the preemption issue than did the state court does not bring this case within the bounds of *Younger*.

## II. RES JUDICATA AND THE SUBSTANCE OF READYLINK'S PREEMPTION CLAIM WERE NOT BEFORE THE TRIAL COURT AND CANNOT BE RAISED FOR THE FIRST TIME ON APPEAL

Respondents argue in the alternative that the California Supreme Court's denial of ReadyLink's petition for review provides a basis to uphold the district court's dismissal and precludes ReadyLink's federal action on res judicata grounds. SCIF also argues that the Commissioner's Decision is not preempted by federal law. Both of these arguments are improperly raised for the first time to this Court, and both arguments fail.

**A.    Appellate Review Is Limited To The Issues Properly Raised Below**

A federal court's appellate review is generally limited to the claims or issues properly raised in the proceedings below.[11]  *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Baccei v. U.S.*, 632 F.3d 1140, 1149 (9th Cir. 2011) ("[W]e will not reframe an appeal to review what would be in effect a different case than the one decided by the district court").  Absent exceptional circumstances, this Court "normally will not address arguments not properly raised in the court below. . . . particularly when the pertinent record is not fully developed."  *Hifai v. Shell Oil Co.*, 704 F.2d 1425, 1428 (9th Cir. 1983) (declining to consider res judicata raised first on appeal from summary judgment motion); *accord In re Home Am. T.V.- Appliance Audio, Inc.*, 232 F.3d 1046, 1052 (9th Cir. 2000).  The refusal to consider a claim raised for the first time on appeal is well within the Court's discretion.  *Singleton,* 428 U.S. at 121.

**B.    Respondents Did Not Raise Res Judicata Below And Should Not Be Permitted To Argue It Here**

Respondents never raised the bar of res judicata to the district court, and should not be permitted to do for the first time on appeal.

---

[11] For an issue to have been properly raised below, it "must be raised sufficiently for the trial court to rule on it."  *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992).  A matter merely alluded to or raised in passing is not preserved for appeal.  *Id.*  Indeed, facts and documents not before the district court ordinarily are not considered by the appellate court when reviewing the appealed order.  *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990).

Respondents moved to dismiss ReadyLink's claims on the grounds of subject matter jurisdiction. Respondents argued: (1) the Complaint did not present a federal question, (2) ReadyLink failed to exhaust its judicial remedies, and (3) the Eleventh Amendment and principles of comity dictated dismissal. EOR0003-4. The Court ordered supplemental briefing on whether it should abstain pursuant to the *Younger* or *Colorado River* doctrines, and ultimately abstained based on *Younger*. EOR0004; *see also id.* at 0091.

Respondents make no attempt to even identify any purported "exceptional circumstances" as to why this Court should entertain res judicata here. This Circuit has frequently refused to consider res judicata raised for the first time on appeal. *See Rotec Industries, Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003); *see also Alloure, Inc. v. FA Cooperative, Inc.*, 438 Fed.Appx. 571, 572 (9th Cir. 2011); *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998).

Moreover, although this Court may affirm the dismissal of ReadyLink's Complaint on a different ground than the district court, it must be a ground "*supported by the record.*" *Harris v. Alvarado*, 402 Fed.Appx. 180, 181 (9th Cir. 2010) (*see* SCIF Br. 15, n. 5) (emphasis added). Because the issue was not raised below, the basis for Respondents' res judicata argument is not contained in the record on appeal. This is evident given SCIF's extensive Request for Judicial Notice ("RJN") wherein it (improperly) asks the Court to take judicial notice of

21.

eight different exhibits outside the record and not before the district court. Specifically, SCIF states "Exhibits 4, 5, 6 and 8 demonstrate that ReadyLink's preemption claim is barred by res judicata." SCIF RJN at 3. Thus, even *if* the Court found exceptional circumstances existed, and even *if* it chose to exercise its discretion to consider res judicata, it would be improper affirm on such grounds.[12]

### C. Raising Res Judicata Does Not Eviscerate The Court's Ability To Address *Younger*

SCIF argues that because Respondents have raised res judicata for the first time here, this Court need not reach the abstention issue. There is no merit to this argument.

SCIF relies on *Turnbow v. Pacific Mut. Life Ins. Co.,* 934 F.2d 1100 (9th Cir. 1991). *Turnbow* is readily distinguishable. There, this Court declined to reach the abstention issue because the defendant had chosen *not* to appeal the federal district court's earlier decision to stay the federal action "pending the state court's final word on ERISA preemption." *Id.* at 1102. Instead, the defendant chose to wait for the state decision, trusting it would be in its favor. *Id.* at 1104. When it was not, this Court noted *in dicta* that in light of defendant's litigation strategy of

---

[12] Further, although an appellate court *may* affirm on other grounds specifically supported by the record, it need not do so. An appellate court is not required to find grounds to support the district court decision and may reverse even though some theory may very well have supported the decision. *New Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1092 n.1 (9th Cir. 2011); *Doe v. Holy See*, 557 F.3d 1066, 1076 n.5 (9th Cir. 2009)

waiting around to obtain the state court's decision on preemption, abstention "appear[ed] to be a moot issue." *Id.* at 1104.

ReadyLink, of course, timely appealed the district court's decision. And, in stark contrast to Turnbow's wait-and-see strategy, ReadyLink has contested at every turn the state's ability to adequately address the federal issue.

The balance of SCIF's authority is not controlling and is distinguishable. *Tarrant Regional Water Dist. v. Sevenoaks*, 545 F.3d 906, 914 (10th Cir. 2008), a Tenth Circuit case, merely held that *denial* of abstention is not a reviewable collateral order. *Weber v. Van Fossen*, 322 Fed.Appx 429, 434 (6th Cir. 2009), an unpublished Sixth Circuit case, relies on *Turnbow* which, as above, turns on the fact that the defendant failed to seek timely review of the decision to abstain. Further, it was decided under Michigan law, which differs substantially from California and holds non-final judgments pending appeal to have res judicata effect. *See id.*

In short, none of the authority SCIF cites supports the extreme position that review of dismissal on abstention grounds is moot because the appellee raises res judicata for the first time on appeal.

### D. Res Judicata Does Not Apply

Further, Respondents arguments are unavailing because res judicata does not apply. Whether *issue* preclusion applies to the specific claims that were

*actually litigated* and *necessarily decided* by the Commissioner, i.e. whether ReadyLink's *per diem* payments were "reasonable" within the meaning of the USRP, is a separate issue and is no bar to ReadyLink's federal case. That aside, it is clear that ReadyLink's preemption claim is not precluded.

It is well settled that res judicata cannot apply unless the rights of the party to be estopped were adequately protected in the prior litigation. "Res judicata does not act as a bar[ ] 'when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim.'" *People of State of Cal. v. F.C.C.*, 905 F.2d 1217 (9th Cir. 1990) ("*F.C.C.*") (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480-81 & n.22 (1982)). Indeed, "redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer*, 456 U.S. at 481 (quotation omitted).

Res judicata does not apply here because, from both a practical and legal perspective, the state case did not provide ReadyLink with an opportunity to fully, fairly and adequately litigate the preemption issue.

*Scroggins v. State of Kansas*, 802 F.2d 1289 (10th Cir. 1986), is instructive. There, the Tenth Circuit considered whether an administrative board's decision on the merits of an employee discharge, which was upheld on appeal, barred the employee's subsequent federal employment discrimination suit. *Id.* at 1290. The

24.

court concluded that res judicata did not bar Scroggins from pursuing the federal claim. *Id.* at 1291. Although the administrative board held a quasi-judicial hearing and entertained evidence including, by one account, "excruciatingly detailed testimony" on the discrimination claim, the court found the evidence of the type required and available in a full fledged federal trial was not a part of the administrative proceedings. *Id.* at 1291.

Appellate review of Scroggins' claim was available and he pursued it. *Id.* at 1290-91. However, review of the board's decision was limited in scope to "whether (1) the tribunal acted fraudulently, arbitrarily, or capriciously; (2) the order [was] substantially supported by the evidence; and (3) the tribunal's action was within the scope of its authority." *Id.* at 1291. As the court noted:

> Appellant was caught between the Scylla of pursuing and exhausting his administrative remedies in a state procedure focusing on the reasonableness of the Agency's decision to dismiss and the Charybdis of proceeding in his previously filed federal suit in which defendants had initially moved to dismiss and answered with the defense of failure to exhaust administrative remedies.

*Id.* at 1292.

With such a record, the court was left genuinely "concerned that a full and fair opportunity to litigate the merits of appellant's claim for racial discrimination before a tribunal authorized to hear the claim was eluded." *Id.* at 1292. Thus, because Scroggins did not have the ability to fully flesh out his federal claim at the administrative level, and court appellate review of that decision was limited in

25.

scope, "[w]hile appellant may have been afforded procedural due process within the channels prescribed by state law, that procedure is no substitute for substantive due process." *Id.* at 1293.

ReadyLink is stuck between the same Scylla and Charybdis. Indeed, ReadyLink's preemption claim was *not presented or decided* at the administrative hearing, nor could it be. And, like *Scroggins*, writ review here under Code of Civil Procedure section 1094.5 was limited to ascertaining whether the facts contained in the administrative record or the law supported the agency's decision. *See McAllister*, 169 Cal.App.4th at 921. Where, as here, a litigant's federal claim requires the consideration of evidence, and that litigant was not afforded any competent tribunal to muster and present such evidence, it has not had a full and fair opportunity to litigate its claim and res judicata does not apply. *Scroggins,* 802 F.2d at 1292; *see also F.C.C.,* 905 F.2d at 1245.

### E. The Merits of Preemption Were Not Before The District Court And Should Not Be Considered Here

SCIF further argues that this Court may and should decide that the Commissioner's Decision is not preempted by IRS regulations because (1) the Commissioner's Decision does not conflict with federal tax regulations, and (2) if it does, the McCarran-Ferguson Act (the "McCarran Act") dictates that the Commissioner's Decision would take precedence. This is but another attempt to

distract from the only pertinent issue to this appeal – *Younger* abstention – and should be disregarded.

Whether the Commissioner's Decision creates an obstacle to the benefits of IRS regulations and is therefore preempted is the heart of this case and was not before the district court. SCIF did not bring a summary judgment motion; it moved to dismiss on the basis of subject matter jurisdiction and failure to state a claim. EOR0003-4 ("SCIF argues there is no federal subject matter jurisdiction over the Complaint, ReadyLink's claims are foreclosed by reverse preemption under the McCarran-Ferguson Act, see 15 U.S.C. § 1012, and ReadyLink has failed to exhaust its judicial remedies in state court.") To the extent SCIF raised the McCarran Act to the district court, it did so to argue that the McCarran Act stripped the court of jurisdiction.

SCIF fails to point to any extraordinary circumstances compelling this Court to take up the substance of the preemption issue now on an undeveloped record. *See Hifai,* 704 F.2d at 1428. This is simply an end-run around summary judgment procedures and protections and should be disregarded.

Moreover, the McCarran Act does not apply. First, the determination of an employer's payroll is not the "business of insurance" as that term is used in the McCarran Act. Payroll is an employer function. It is obviously not the exclusive province of the insurance industry.

27.

Second, SCIF points to no "state law" that would be affected by the IRS regulations as required by the McCarran Act. SCIF relies on the Commissioner's Decision as the basis for the state law that would be "invalidated, impaired or superseded." However, a rule interpretation by a state agency official is not within the purview of the McCarran Act. *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002).

Third, even assuming the guidelines published by the Department of Insurance could be considered state law, the application of IRS regulations would not "invalidate, impair, or supersede" them as required for "reverse-preemption" under the McCarran Act. The USRP merely provides that *per diem* payments are excludable from payroll for premiums purposes, provided they are reasonable. EOR0037. IRS regulations *also* state that *per diem* payments are excludable. EOR0076-77. Thus, there is no basis to conclude federal tax law would in any way impair the USRP's policy.

Indeed, as SCIF's own authority recognizes "[t]he application of Federal law to insurance companies, including the Federal income tax …, is not inconsistent with the intent of Congress to refrain from interfering with State regulation of insurance companies." *Hanover Ins. Co. v. Comm. of Internal Revenue*, 65 T.C. 715, 721-22 (1976).

28.

Accordingly, the McCarran Act provides no basis to affirm the district court's dismissal.

## III.   CONCLUSION

For the foregoing reasons ReadyLink respectfully requests this Court reverse the decision of the district court and remand to the district court to permit ReadyLink to litigate the merits of its claims for relief.

Dated:        April 5, 2013                          COOLEY LLP


                                        By:


                                               s/Seth A. Rafkin
                                        _____
                                                    Seth A. Rafkin


                                        Attorneys for Appellant
                                        ReadyLink Healthcare, Inc.


810047 v6/SD

29.

**Form 6.       Certificate of Compliance With Type-Volume Limitation,
                Typeface Requirements, and Type Style Requirements**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)
        because:

   ☒ this brief contains <u>6,901</u> words, excluding the parts of the brief exempted
      by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains_____ lines of text,
      excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
        and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this brief has been prepared in a proportionally spaced typeface using *(state name
      and version of word processing program)* <u>Microsoft Office Word 2007</u>
      *(state font size and name of type style)* <u>size 14 Times New Roman</u>, *or*

   ☐ this brief has been prepared in a monospaced spaced typeface using *(state name
      and version of word processing program)* _____
      with *(state number of characters per inch and name of type style)*
      _____ .

Signature | s/Seth A. Rafkin

Attorney for | Appellant ReadyLink Healthcare, Inc.

Date | April  5, 2013